# CHARLESTON.

OHIO-WEST VIRGINIA CO. *v.* CHESAPEAKE & OHIO RY. CO.

Submitted May 20, 1924.   Decided September 9, 1924.

1.   CARRIERS—*Not Essential to Aver Fraud in Action Against Carrier for Negligently Billing and Representing Car of Kerosene to be Gasoline.*

Trespass on the case may be maintained against a common carrier for damages sustained by a consignee of a tank car of kerosene resulting from negligence or carelessness on the part of the agents of the carrier in billing the contents of the car as gasoline, and representing the contents to be such when delivered to the consignee; and it is not essential to aver in the declaration that the carrier fraudulently billed the car as containing gasoline, and fraudulently represented it to be such upon delivery.   (p. 64).

(Carriers, 10 C. J. § 545 [1926 Anno] ; Actions, 1 C. J. § 150).

2. DAMAGES—*Loss of Profits as Result of Tort Must be Such as Reasonably Follow From Wrongful Act, and Certain in Nature and Cause.*

In order to recover for loss of profits as the result of a tort, they must be such as would be expected to follow naturally the wrongful act, and are certain both in their nature and the cause from which they proceed. (p. 67).

(Damages, 17 C. J. § 116).

3. CARRIERS—*Declaration for Falsely Consigning and Representing Car Containing Kerosene to Contain Gasoline Held Good as Against Demurrer.*

Where the declaration charges that defendant, a common carrier, negligently billed a tank car consigned to plaintiff as containing gasoline, when in fact it contained kerosene, and falsely represented to plaintiff upon delivery of the car on the side track at plaintiff's place of unloading that the car contained gasoline instead of kerosene, in consequence of which plaintiff innocently pumped the contents of the car into its gasoline tank, thereby totally destroying the gasoline in its tank as well as the kerosene in the car, stating the respective values of the commodities destroyed, a cause of action is stated and a general demurrer should be overruled. (p. 64).

(Carriers, 10 C. J. § 545 [1926 Anno]).

4. DAMAGES—*Special Damages Must be Shown to Result Wholly and Exclusively Supported by Injury Complained of.*

To maintain an action in case for special damages it must appear from the facts set out in the declaration that they resulted wholly and exclusively from the injury complained of and not from the wrongful act of plaintiff's customers and the general public remotely induced thereby. (p. 70).

(Damages, 17 C. J. § 307).

5. CARRIERS—*Damage to Consignee's Business Held Not Recoverable for Billing Gasoline as Kerosene.*

Where in such case, it is further charged that plaintiff sold a quantity of the mixture thus occasioned to its customers, believing and representing it to be pure gasoline, and as a result thereof its customers and the general public refused further to deal with plaintiff, causing it to lose prospective profits, and impairing the value of its business, whereby it was compelled to sell its entire plant and business at a loss, such items of damage are not the direct, natural, probable, and reasonable consequence of the negligent act of defendant, but are too remote and conjectural, springing from want of confidence in its customers and the general public in the care.

skill, and business integrity of plaintiff, and a specific demurrer to these items of damage should be sustained.  (p. 70).

(Carriers, 10 C. J. § 616).

Note:  Parenthetical references by Editors, C. J.—Cyc.  Not part of syllabi.

Certified from Circuit Court, Kanawha County.

Action by the Ohio-West Virginia Company against the Chesapeake & Ohio Railway Company. Rulings overruling general demurrer and sustaining specific demurrers to declaration were certified for review.

*Ruling affirmed.*

*Byrne, Littlepage, Linn, Kelly & Watts,* for plaintiff.
*Fitzpatrick, Brown & Davis* for defendant.

Lively, Judge:

In June, 1923, plaintiff was operating a service station at Mabscott, Raleigh County, and retailing to its customers gasoline and kerosene. It had installed tanks near a side track of defendant into which it unloaded, by means of pipes and pumps, the tank cars containing these oils and gases consigned to it. A car consigned to plaintiff by Great Eastern Refining Corporation at Catlettsburg, Kentucky, was set in on the side track by defendant and the freight bill delivered to plaintiff by defendant described the contents as 8095 gallons of gasoline, when in fact the contents of the car was about that number of gallons of kerosene, a fact which plaintiff says defendant well knew, but carelessly, wrongfully, falsely and negligently represented the contents to be gasoline; and the declaration charges that relying upon the false representation of defendant it innocently pumped the kerosene in the car into its gasoline tanks situated near the side track, thereby totally destroying 20,000 gallons of gasoline, then in the tanks, worth $3,800.00, and totally destroying the kerosene so pumped worth $720.00. The declaration says the mixture or a part of it was sold to plaintiff's customers, for a period of three days before discovery of the mistake, causing them to decline to further deal with plaintiff, which resulted in loss of profits in the months of June, July and August of that year amounting to $3,600.00, and as

a direct result of the negligent misrepresentation of defendant the value of plaintiff's plant as a going concern was depreciated and it was compelled to sell and did sell its entire plant, in the month of August, 1923, at a loss of $35,-000.00, the plant being worth $60,000.00 immediately before the admixture of the gasoline and kerosene, and the sale price being $25,000.00, its true value, in the month of August, 1923; that plaintiff expended $3,000.00 in work and expenses in trying to minimize the damages so caused by defendant. Plaintiff seeks to recover these items of damage by its action of trespass on the case.

A general demurrer was overruled; and specific demurrers to that part of the declaration claiming damages for loss of profits in the months of June, July and August, and damages to plaintiff's plant and business were sustained. Upon joint application the court certified its rulings for review.

Two questions are presented: (1) Did the court err in overruling the general demurrer to the declaration? (2) Did the court err in sustaining the specific demurrer to that part of the declaration claiming as items of damages loss of profits and injury to plaintiff's plant and business as a going concern?

Defendant argues that the general demurrer should have been sustained, on the ground that the declaration failed to aver that the delivery of the freight bill was a fraudulent act, and the representation that the tank car contained gasoline instead of kerosene was fraudulently made. It insists that the declaration is not based on a breach of the contract of carriage, but is for fraud and deceit or negligent misrepresentation, and therefore fraud should be specifically and fully charged, citing *Loomis* v. *Jackson*, 6 W. Va. 613; *Lumber Co.* v. *Rose*, 87 W. Va. 484, 105 S. E. 792, and *Interstate Finance Co.* v. *Schroeder*, 74 W. Va. 67, 81 S. E. 552. The declaration is not based on fraud and deceit. The gravamen of the charge is carelessness and negligence in making out the freight bill and in representing to plaintiff when it delivered the tank car on the side track that it contained gasoline instead of kerosene. Carelessness and negligence on the part of defendant is the basis of the claim for damages. The declaration avers that defendant through its ser-

vants, agents and employees had negligently, carelessly and improperly billed and represented the tank car as containing gasoline, when in truth and in fact defendant had been informed and well knew that said car contained kerosene and not gasoline, and had received shipping instructions from the shipper to bill the same as kerosene. The defendant is alleged to be a common carrier, and as such had been delivering tank cars containing gasoline and kerosene consigned to plaintiff on its side track at Mabscott and notifying plaintiff of the delivery of the tank cars and the contents thereof: The duty of defendant to plaintiff in its capacity as a common carrier and the breach of that duty by negligence and carelessness, resulting in damages we think is sufficiently averred. The object of a declaration is to give notice to the adverse party of the grounds of the complaint, and if the facts are stated in a tort action from which, upon demurrer, the court can determine that plaintiff is entitled to recover, recovery may be had if the facts stated are sustained by the proof. *Poling* v. *Ohio River Ry. Company*, 38 W. Va. 645, 18 S. E. 782.

The wrongful act in billing the car as containing gasoline and in making a false representation of its contents on which the plaintiff relied is the gravamen of the action. The foundation of the action springs out of the fact that defendant is a common carrier and owed a duty to plaintiff as such which it failed to perform. The remedy of a breach of this duty is in case upon tort or in assumpsit. *Ferrill* v. *Brewis' Admr.*, 25 Grattan 765; *J. B. Carr & Co.* v. *Southern Ry. Co.*, 79 S. E. 41; *Express Co.* v. *McVeigh*, 20 Grattan 264. It is not essential that the declaration should contain the averment that the contents of the car were fraudulently billed, or fraudulently misrepresented when delivered. The declaration states a cause of action in case, and the general demurrer was properly overruled.

Did the court err in sustaining the specific demurrer to those portions of the declaration which claim damages for loss of; profits, and for depreciation of or injury to plaintiff's plant and business?

Defendant argues that the loss of profits and damages to the business as alleged are improper because they are not such

damages which according to common experience, and the usual course of events might reasonably have been anticipated.

Plaintiff argues that as the declaration avers that the loss of profits and destruction or impairment of plaintiff's business was the "direct result and consequence of said wrong and injury complained of," the true solution can only be found upon whether the evidence when tendered would be sufficient to prove to the satisfaction of court and jury that the loss of profits and impairment of the business was a proximate, direct and natural consequence of the negligence complained of.

The loss of profits and impairment of business is stated to be a result of the refusal of plaintiff's customers and the refusal of the general public to further deal with plaintiff because it had sold some of the mixture of kerosene and gasoline under the erroneous belief that it was pure gasoline. The cause of the "direct result and consequence of said wrong and injury complained of" is thus pleaded. Plaintiff sold for three days the spurious mixture under the belief that it was pure gasoline; as a consequence, its customers and the general public refused to further patronize its service station, and profits decreased, a loss of $1,000.00 for each of the three succeeding months was incurred in loss of profits, and damages to the business caused plaintiff to sell out at a loss of $35,000.00.

An inspection of the decisions reveals that where loss of profits is claimed as an element of damages for *breach of contract,* or loss of profits of sale or purchase as a result of *breach of contract,* the profits must be proximate, absolute and certain, not remote, contingent or uncertain; and must be such as must have reasonably been within the contemplation of the contracting parties at the time the contract was made. In actions of tort the rule is somewhat different in that the doctrine of loss of profits contemplated at the time the contract was made if a breach be had by either party, has no application. *Allison* v. *Chandler,* 11 Mich. 542; *Terre Haute* v. *Hudnut,* 112 Ind. 542, 13 N. E. 686. Hence in actions of tort, the rule is that the doctrine that the tort feasor is liable only for such injuries as may reasonably have been

contemplated by the parties, does not prevail. *Kentucky Heating Co.* v. *Hood,* 133 Ky. 383, 22 L. R. A. (N. S.) 588; *Wyant* v. *Crouse,* 127 Mich. 158, 86 N. W. 527. Sutherland on Damages Vol. 1, Sec. 16, where the author says, "Whether the injurious consequences may have been 'reasonably expected' to have followed from the commission of the act is not at all determinative of the liability of the person who committed the act to respond to the person suffering therefrom." *Railway Company* v. *Spears,* 110 Va. 113, 65 S. E. 482; *Stevens* v. *Dudley,* 56 Vt. 166.

However it is equally well established that where loss of profits by reason of a tort are allowed, they must be such as would naturally be expected to follow the wrongful act and are certain both in their nature and in respect to the cause from which they proceed. *Wolff* v. *Hyass,* 11 Miscl. 561, 32 N. Y. Supp. 798. *Lowrie* v. *Castle,* 225 Mass. 37, 113 N. E. 206; *Johnson* v. *Atlantic Coast Line,* 140 N. C. 574; 17 C. J. Page 794, Sec. 116. "The modern rule, however, does not deny a recovery of profits because of the fact that they are profits, but because they are speculative, contingent or uncertain, and while there are many cases in which they have been denied upon these grounds, the generally accepted rule is that, where it is shown that a loss of profits is the natural and probable consequence of the act or omission complained of, and their amount is shown with sufficient certainty, there may be a recovery therefor, but anticipated profits cannot be recovered where they are dependent upon uncertain and changing conditions such as market fluctuations, or the chances of business, or where there is no evidence from which they may be intelligently estimated. So, evidence to establish profits must not be uncertain or speculative." 17 C. J. Page 785, Sec. 112.

A good summary of the result of the decision relating to the question under discussion is found in the conclusion of note to *Wallace* v. *Pennsylvania Ry. Co.,* 52 L. R. A. 1 and *Horres* v. *Berkeley Chemical Co. Idem,* Page 36, which I take the liberty of quoting:

."There is little to be said in conclusion in this note, but to repeat the statement previously made that loss of profits furnishes a ground for recovery in actions for damages for

tort, where they are susceptible of accurate estimation, and the loss of such profits was the proximate result of the wrong, and the profits were not speculative, contingent, or uncertain; but they cannot be recovered if they were remote, speculative, contingent, or uncertain. The courts have not attempted to define these terms abstractly, or to show any definite rule as to just what constitutes remote, speculative, contingent, or uncertain profits, and indeed, it would seem that they might be deemed to be concrete as used in this connection, and not susceptible of limitation by abstract rules. They have decided each case on its own facts and circumstances, and the reader is referred to such cases above tabulated. It is thought to be deducible from such cases, however, that the line between proximate and remote profits is the same in principle as that between proximate and remote cause in negligence cases.

"With reference to the nonallowance of profits lost as damages because they were speculative, contingent, or uncertain, the most definite rule that can be drawn from the cases would seem to be that if by any chance, or under any condition of affairs then existing, the profits might not have accrued though the wrongful act had not intervened, there can be no allowance for profits lost as damages. But if, but for the wrongful act, there must have been profits notwithstanding any other circumstances existing at the time of the perpetration of the wrong, the question of their speculativeness and contingency is absolutely negatived. They need not be absolutely certain in amount to warrant recovery; reasonable certainty is sufficient, so long as they are neither remote, speculative, nor contingent. But they must be reasonably certain to warrant their use as a criterion or measure of damages, though they may furnish a subject for the consideration of the jury on the question of the extent of the injury in cases of such a nature that there are no data or elements of certainty by which substantial compensation may reasonably be estimated whenever they have a tendency to show damages or their probable amount."

Illustrative of the application of the principle clearly set out in the decisions and text books to the effect that if the tortious act or omission is not the reasonable, natural and

direct result of the loss of profits or damage to the business, recovery cannot be had, are the cases of *Crain* v. *Petrie,* 6 Hill 522, 41 American Decisions 765, where plaintiff was engaged in butchering and selling sheep and bought sheep from defendant which were diseased defendant knowing that fact, but representing them to plaintiff as healthy. A customer of plaintiff who had contracted to take hams and shoulders of sheep during a period, refused to carry out his contract because of a report that plaintiff had purchased diseased sheep from defendant, and other customers refused to deal with plaintiff because of that same report. The court held that plaintiff could not recover because the damages claimed (loss of profits and impairment of the business) were not the legal and natural consequences arising from the tort, but were the result of the wrongful act of third parties remotely induced thereby. The court said the consequential loss was occasioned by the want of confidence on the part of plaintiff's customers in the care, skill or integrity of plaintiff himself, the people assuming that he might sell meat of a diseased sheep for a good and merchantable article. And in *Butler* v. *Kent,* 19 Johnson 223, 10 Am. Dec. 219, plaintiff who had purchased lottery tickets for resale sued the lottery managers because their careless, negligent and improper conduct in the conduct of the lottery impaired public confidence, and he was unable for that reason to sell the tickets whereby he suffered loss of profits and damages to his business. Recovery was denied, one of the grounds being that the allegation of special damage to the effect that in consequence of the loss of public confidence in the integrity and fairness of the drawing of the lottery the plaintiff could not sell the tickets at retail, was too general, the court saying, "It is impossible to conceive anything more vague and untriable than the loss of a market for any commodity from the want of public confidence." The damages were held not to be the natural and direct consequences of the wrongful acts imputed to defendants. And in *Chicago B. & Q. R. Co.* v. *Gelvin,* 238 Fed. 14, Plaintiff Gelvin sued defendant for negligently permitting sparks to escape from a locomotive, setting fire to the pasture in which his cattle grazed whereby the cattle were stampeded, injured, and did not take on flesh

for the market. The court held that the injury to the cattle was not the natural and proximate cause of the wrongful act complained of, such injury not being one in the common experience of mankind known to be likely to result from a fire of that character.

Our case of *Chambers* v. *Spruce Lighting Co.*, 81 W. Va., 714, cited, holds in effect that the wrongful interruption or cutting off of an electric current which furnished light to a hotel was a direct, proximate and natural result of the impairment of the business of the hotel and the measure of damage for which was not depreciation in the rental value of the building, but rather loss of profits of the business during the time the current was cut off. Likewise, the case of *Kentucky Heating Co.* v. *Hood*, 118 S. W. 337, 22 L. R. A. (N. S.) 588, cited by plaintiff's counsel, allows recovery for loss of profits to an established business occasioned by the wrongful cutting off of a gas necessary to the conduct of the business. It is quite generally held that loss of profits established to a reasonable degree of certainty is a proper element of damages in cases where the supply of heat, water or gas has been wrongfully cut off from premises in which a business is conducted. In such cases the damage is considered to be the direct, natural and immediate or proximate cause of the wrongful act. Many other cases cited by plaintiff relate to the character and sufficiency of evidence necessary to establish the quantity of damage, and in proving the loss of profits, and detriment to the business, such as *Hurxthal* v. *Boom Company*, 65 W. Va. 346, 64 S. E. 355; 8 R. C. L. Sec. 53, page 492. As to the method of proving damages and the character and sufficiency of the evidence, we are not now concerned. The question here presented by the demurrer is whether the declaration is sufficient on which to base evidence of the loss of profits to plaintiff's business and damages for injury thereto.

The principle of law which is applicable is that if the damages resulting from a tortious act, measured in part by loss of profits, are the reasonable, natural and direct, or proximate, result of the wrongful act, recovery may be had. If not, recovery must be denied. The declaration charges, "That as the direct consequence and effect of so mixing and

mingling of said gasoline and kerosene and of so selling and distributing such mixture as, and in the belief that the same was gasoline,'' its customers and the general public refused to deal with plaintiff, causing the loss of profits and impairment of business complained of. Was the negligent billing of the car the direct and natural consequence of refusal of plaintiff's customers and the general public to deal with plaintiff? The alleged misbilling of the tank car as containing gasoline caused the intermingling which, according to the declaration destroyed both gasoline and kerosene, a result which might reasonably have been anticipated. It was the sale of a small part of this worthless mixture by plaintiff believing it to be pure gasoline, which resulted in the alleged loss of profits and impairment of business. Could it be reasonably anticipated or expected that plaintiff would sell this worthless mixture? Certainly it could not be reasonably expected that a sale of a small quantity of this spurious mixture would destroy confidence of plaintiff's customers and the general public in the business integrity and fair dealing of plaintiff. The negligent act is not of such a character which, according to the usual experience of mankind would bring about the train of consequences alleged. The wrong doer is held responsible for all the consequences of his negligent act which are natural and probable, and ought to have been foreseen by a reasonably prudent man. *Railway* v. *Calhoun*, 213 U. S. 8, 53 L. Ed. 671. ''An injury which could not have been foreseen, nor reasonably anticipated is not actionable and such an act is either the remote cause, or no cause whatever of the injury.'' *Cole* v. *German Society*, 124 Fed. 113, 63 L. R. A. 416. See *Fawcett* v. *Ry. Co.*, 24 W. Va. 759; *Teis* v. *Smuggler Mining Co.*, 158 Fed. 260; *Chicago &c.* v. *Gelvin*, 238 Federal 14. In *Bradstreet Co.* v. *Oswald*, 96 Ga. 396, profits alleged to have been lost by reason of plaintiff's inability to buy goods from wholesale merchants to be in turn sold to his customers, by reason of a false report of his financial condition innocently but negligently made by defendant Bradstreet Company, were denied because such loss of profits was too remote and conjectural. In the case now before us the loss of profits and impairment of business is pleaded as the result of loss of confidence of plaintiff's customers

and the general public in its business dealings. As was said in *Butler* v. *Kent, supra,* "It is impossible to conceive anything more vague and untriable than the loss of a market for any commodity from the want of public confidence." The loss of prospective profits and damage to the business claimed is the result of the act of plaintiff's customers and the general public in refusing to deal with it, remotely induced by the negligent act of billing the car. To recover in cases of this character the special damages must be the direct, natural and reasonable consequence of the act complained of. The charge in the declaration that the special damages were the direct result and consequence of the wrong and injury complained of is a conclusion from the facts and circumstances stated.

The specific demurrer to the items of damage named, loss of anticipated profits and impairment of the value of plaintiff's plant and business, was properly sustained; and we so answer the second question certified.

Such reasonable expense incurred in plaintiff's efforts to minimize the damages recoverable, are proper to be considered by the court and jury. If the gasoline and kerosene were rendered worthless, as charged, the value of these commodities to plaintiff at the time of the destruction is recoverable. Otherwise, the recovery would be based on the difference between the value immediately before and the value immediately after the intermingling.

*Ruling affirmed.*