## HADDAD v. WESTERN CONTRACTING CO. et al.

Civil Action No. 106–F.

District Court, N. D. West Virginia.

March 26, 1948.

988

See also, D.C., 71 F.Supp. 212.

Stathers, Stathers & Cantrall and William G. Stathers, all of Clarksburg, W. Va., and Howell Leuck and Edward E. Edmiston, both of Cleveland, Ohio, for plaintiff.

Steptoe & Johnson, James M. Guiher, and Edward W. Eardley, all of Clarksburg, W. Va., and Lowell C. Kindig, of Sioux City, Iowa, for defendants Western Contracting Corporation, Ralph C. Myers Construction Co., Foster Myers, Clyde Goen, and Ralph C. Myers Construction Co.

Thomas B. Jackson, of Charleston, W. Va., for defendant National Surety Corporation.

WATKINS, District Judge.

Plaintiff, a subcontractor in the construction of the Wood County Airport at Parkersburg, W. Va., brought this suit against the principal contractor, Myers-Western, for breach of the subcontract, seeking to recover for material and labor put into the project and for anticipated profits under the subcontract. Plaintiff claimed that after part performance on its part, the principal contractor breached the subcontract, making it impossible for plaintiff to finish the job. Under the terms of the subcontract plaintiff agreed to do the drainage on the airport. Defendant was to do the grading in accordance with certain plans and specifications in preparation for the drain-

age work. Plaintiff contended that defendant breached its contract in failing to do the grading in accordance with such plans and specifications, thereby increasing the cost of the drainage work to such extent that it became necessary for plaintiff to leave the job before completion. Defendant denied any breach of contract on its part and filed a counterclaim against plaintiff for the cost of completing the job. The issues were presented to a jury which returned a verdict for plaintiff in the amount of $22,808.43. Defendant moved for judgment notwithstanding the verdict and in the alternate for a new trial.

The motion for judgment notwithstanding the verdict is denied. The evidence was definitely conflicting upon the question of which party first breached the contract. There was ample evidence offered by plaintiff, which, if believed by the jury, would justify a verdict for the plaintiff. The motion for a new trial was based upon several grounds. First, it was contended that plaintiff's evidence, even though believed by the jury, was insufficient to show a breach of contract by defendant. For reasons previously stated there is no merit in this contention.

■ The second point urged by defendant is that the court should not have permitted an item of $8,262.31, claimed by plaintiff for extra work in the ravines, to be considered by the jury. I can not agree with defendant that there are no pleadings to support this claim and that it is not a recoverable item in this action. Defendant also says that plaintiff bid what amounted to $4,224.91 for this extra work, and was paid therefor. Plaintiff testified that his bid was for hauling the pipe to the surface of the airport and for laying it on the surface of the airport. He says that the $8,262.31 item now claimed by him was the actual cost to him of other and additional work ordered by defendant, namely, hauling the pipe to the ravines and laying the pipe in the ravines, a much different and much more costly job than what he had bid upon. Under the evidence I am of opinion that this was a jury question.

■ The next and most substantial point urged by defendant is that the court erred in submitting to the jury over defendant's objection an item of $27,000 for loss of anticipated profits which plaintiff claims he would have realized in completing the contract, except for defendant's breach of contract. Defendant says that the evidence as to such profits was so meager and uncertain that such item of profits should have been withdrawn from the case. The point was timely raised by motion at the conclusion of plaintiff's evidence, at the conclusion of all evidence and by exception to the court's charge.

About the only evidence offered by plaintiff as to prospective profits was as follows: He was an experienced contractor and took the drainage job for $151,000, then estimating that he would make about 20% or approximately $30,000 profit on the job. At the trial he gave it as his opinion that taking weather conditions, transportation and labor difficulties, other losses, difficulties and miscalculations, his profit on the job would have been $27,000. He also offered in evidence an itemized statement of his expenditures for labor and material while he was on the job completing about 20% of the drainage contract. Plaintiff conceded that he had lost $15,000 on the job before the alleged breach by Myers-Western occurred. In fairness to him, however, it is apparent that this item of loss included the sum of $8,262.31 which plaintiff claimed was still coming to him because of extra work. It is also apparent that the initial cost of getting materials and labor on the job preparatory to beginning the work would be the most expensive part of the job and the work would not likely show a profit at that time. Defendant also urges that after the alleged breach of contract on February 12, there were many days when the weather prevented work and there were labor strikes. These and other points mentioned above are urged by defendant to show that there was no reasonable expectation of profit by plaintiff. The evidence shows that in figuring the cost of the job plaintiff took into account all such weather conditions and figured only 20 working days to the month, also that strikes which closed down operations for four days were attributable to defendant. Of course, under the defendant's interpretation of the con-

tract, there could have been no profit to plaintiff. The jury evidently rejected defendant's theory of the case. Under plaintiff's evidence, if believed, the fact that profits would have been realized by plaintiff, except for the breach of contract by defendant, was established with reasonable certainty. No evidence was offered by plaintiff as to how much material and labor it would take to complete the job, if the grading had been done by defendant in accordance with the contract. No evidence was offered as to the estimated cost of necessary labor and material at current market prices to complete the job.

The early American and English cases excluded prospective profits altogether in actions for breach of contract because of their uncertainty. But these decisions are no longer followed. Profits which have been lost as a natural consequence of a breach of contract can now be recovered but there can be no recovery if such profits are uncertain, contingent, conjectural or speculative. This means that where it is uncertain whether any profits at all would have been made by plaintiff such profits are speculative and no recovery for loss of profits will be allowed. Denning v. Suncrest Lumber Company, 4 Cir., 51 F.2d 945, 948; White River Levee District v. McWilliams Dredging Co., 8 Cir., 40 F.2d 873. But where loss of profits may reasonably be supposed to have been within the contemplation of the parties when the contract was made, as the probable result of its violation, such profits become a part of the contract itself and the right of recovery is clear, because it is presumed that the parties considered such element of profits as one of the chief factors in making the contract. 15 Am.Jur., Section 151. Applying this principle to this case, it may be said that profits were a part and parcel of the contract itself, and were, no doubt, the sole inducement for the arangement.

 The general rule now is that where, from the nature or circumstances of the contract, it may be inferred or presumed that the parties to it contemplated that profits would accrue to one of them from performance, and it is reasonably certain that performance of the contract would have that result, the party who is deprived of such profits by a breach of the contract is entitled to recover the amount of his loss so caused, unless such loss is open to the objection of remoteness or uncertainty. Uncertainty as to amount of the damages does not prevent a recovery, if the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty. Prejean v. Delaware-Louisiana Fur-Trapping Co., 5 Cir., 13 F.2d 71, 72.

 In a case like this where there was only part performance of the contract, profits are prospective and must to some extent be uncertain. Because of the difficulty in proof of the exact amount of damages, plaintiff can not be deprived of all remedy. Absolute certainty of data upon which lost profits are estimated is not required. Too rigid an application of the rules of evidence in such cases would render nugatory the laws designed to protect the innocent. Different circumstances have been allowed to vary the application of such rules in order to make them effective in reaching the ends they were designed to secure. Doubts are generally resolved against the party committing the breach of contract. In some cases the defendant may have reason to foresee plaintiff's difficulty of proof and should not be permitted to profit by it. In such cases a lesser degree of certainty is required as to the amount of loss, leaving a greater degree of discretion to the jury, subject to the usual supervisory power of the court. Restatement, Contracts Section 331. It is sufficient for the plaintiff to show generally the facts which will enable and justify the jury to approximate his profits. It is generally sufficient if there is a certain standard or method by which such profits may be estimated with a fair degree of accuracy. The method here was for the plaintiff to show with a fair degree of accuracy the cost of doing the drainage under the contract, if defendant had done the preliminary grading in accordance with the plans and specifications. The difference between the contract price and the cost of performance would have constituted lost profits. United States v. Purcell Envelope Co., 249 U.S. 313, 320, 39 S.Ct. 300, 63 L. Ed. 620; Belcher v. King; 96 W.Va. 562, 123 S.E. 398. In addition to giving his

estimate of profits the plaintiff should have introduced evidence to show the estimated amount and cost of material and labor it would take to complete the remaining 80 per cent of the job, if the grading had been done according to the contract, taking into consideration the cost of such items at the time of the alleged breach of contract by defendant, and also any weather, transportation or other difficulties beyond the control of the defendant.

There can be no doubt as to the right of plaintiff to recover profits in a case of this kind. But here plaintiff sought to establish the amount of his loss by his opinion of his profits, without giving the facts on which such opinion was founded. This is not a case where plaintiff can establish his profits by the opinion of witnesses, even though they be experts. To hold otherwise would transfer to such witnesses the functions and duty of the jury who are alone given the power of reaching conclusions from given premises. It would make the rights of the parties dependent upon the conjectured and speculative opinion of witnesses, many of whom would not agree. Stewart v. Lanier House Co., 75 Ga. 582. If the loss occasioned by a breach of contract is pecuniary, and is susceptible of proof with approximate accuracy, the plaintiff must furnish the necessary proof and cannot leave the quantum to mere conjecture. Belcher v. King, 96 W.Va. 562, 123 S.E. 398. In Doman v. Baltimore & O. R. R. Co., 1942, 125 W.Va. 8, 22 S.E.2d 703, 705, the West Virginia Supreme Court said: "Another serious state of the evidence is also apparent. The plaintiff testified that his damage was three thousand dollars, being the exact amount claimed in the declaration; but he persistently refused even to attempt to break down this amount into items, or elements, or to give any basis for his conclusion. * * * 'We admit the admissibility of opinion evidence, but insist upon its weakness and upon the necessity of data to enable the jury and court to test its admissibility, weight, and value; and we regard the testimony here discussed as constituting a mere scintilla of evidence, insufficient to sustain a verdict for so large an amount in view of the facts disclosed by the evidence in general.'" See also Chesapeake & O. Railway Co. v. Allen, 113 W.Va. 691, 169 S.E. 610, 612, where the court said: "We are not unmindful of the legal generalizations which favor upholding the verdict. We are reluctant to disturb the verdicts of juries. But reluctance must yield to duty whenever the record affords no substantial evidence to support the quantum of the verdict." Ohio-West Virginia Co. v. Chesapeake & Ohio Ry. Co., 97 W.Va. 61, 124 S.E. 587, 38 A.L.R. 1439.

Under the evidence plaintiff's claim of $27,000 for prospective profits should not have been submitted to the jury. For this reason the verdict of the jury is set aside and the defendant is awarded a new trial.

Since a new trial has been awarded, and since other points raised by defendant will not likely arise upon a new trial, a discussion of such matters will serve no useful purpose.