WILLIAM ARTHUR WISE *v.* THE WESTERN UNION TELE-GRAPH COMPANY, a corporation of the State of New York.

(*November* 5, 1935.)

LAYTON, C. J., and RODNEY, J., sitting.

*James R. Morford* (of Marvel, Morford, Ward and Logan) for plaintiff.

*William S. Potter* (of Ward and Gray) for defendant.

Superior Court for New Castle County, No. 34, November Term, 1932.

RODNEY, J., delivering the opinion of the Court:

By the declaration the plaintiff has alleged a class of customers who subscribed to and used the system or services of the plaintiff. For the loss of these subscribers, due to the alleged action of the defendant, the plaintiff seeks to recover in the original declaration. This class of subscribers we shall, for convenience, call "primary" users.

The first amendment to the declaration brings in another class and seeks to recover for loss arising from the breach of business relations with this latter class. These we may call "secondary" users. No relationship or direct connection is suggested between this "secondary" class and the plaintiff but the sole connection the "secondary" class had was with the "primary" subscribers. We are of the opinion that any mere failure of this secondary class of users to avail themselves of the service or system is too remote to furnish a basis of recovery by the plaintiff. It is not alleged in the amendment that the primary user cancelled his subscription. Certainly it is true that if the secondary user who has been paying the primary user for the benefit of the service stopped using it but the primary user continues to subscribe for the service, then the only loss is upon the primary user and the furnisher of the service or system loses nothing. If the primary user himself ceases to avail himself of the system, then a loss may fall upon the furnisher of the service and, under certain circumstances, he may recover from a third person whose fault created the breach in relations, and this would be true regardless of the action of a secondary user who has no connection with the furnisher of the service.

■ The second amendment seeks to recover for loss of profits from those persons whom the plaintiff alleges would have become clients but for the action of the defendant. The defendant denies that such profits are recoverable.

We are of the opinion that this matter is not now determinable by this Court but must await the offer or introduction of evidence.

■ We are not aware of any rule or reason which would exclude profits, *eo nomine,* as a measure of damage in a tort action if such loss of profit was the natural, probable and proximate consequence of a wrongful act. We are not aware of any distinction in this respect between actions of tort and contract. Selden, J., in *Griffin v. Colver,* 16 *N. Y.* 489, at page 491, 69 *Am. Dec.* 718, says:

> "It is a well established rule of the common law that the damages to be recovered for a breach of contract must be shown with certainty, and not left to speculation or conjecture; and it is under this rule that profits are excluded from the estimate of damages in such cases, and not because there is anything in their nature which should *per se* prevent their allowance. Profits which would certainly have been realized but for the defendant's default are recoverable; those which are speculative or contingent are not."

Many of the cases dealing with the question of damages for tort as affected by the loss of profits are collected in a note in 52 *L. R. A., p.* 33.

The defendant denying the right to recover anticipatory profits relies upon *Eaton v. Wilmington City R. Co.,* 1 *Boyce* (24 *Del.*) 435, 75 *A.* 369, 372. That was an action for personal injuries and rests upon an entirely different principle from that involved in the present case. Where a person is engaged in a mercantile business and sustains personal injuries and seeks to recover in the action for his injuries the loss of profits of the business, the Courts have rather uniformly denied such recovery of profits. The rea-

son is that such profits, as such, do not depend entirely upon the services of the injured person but involve employment of capital, other employees, good will and many other contingencies, and these were not affected by the injury. Such was the holding of the *Eaton Case*.

Where, however, the claim is that the defendant has interrupted an established business, no reason appears why he may not recover those profits which he may prove he would have realized. In such case the profits are not excluded merely because they are profits but the matter becomes one of fact and proof. If the loss of profits is certain and proximate they are recoverable; if remote, contingent or uncertain, they are not recoverable. 1 *Sedgwick on Damages* (*9th Ed.*), § 182; *Ohio-West Virginia Co. v. Chesapeake & O. R. Co.*, 97 *W. Va.* 61, 124 *S. E.* 587, 38 *A. L. R.* 1439; *Weinman v. De Palma*, 232 *U. S.* 571, 34 *S. Ct.* 370, 58 *L. Ed.* 733; 8 *R. C. L.*, § 67.

The plaintiff has urged that the measure of damages as laid down by *Hadley v. Baxendale,* 9 *Exch.* 341, 156 *Eng. Reprint* 145, should apply in this case. That rule is, substantially,

"Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect to such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract itself or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it."

At this time it may be unnecessary or improper to pass upon the measure of damages. Many jurisdictions have held that in a tort action the rule of *Hadley v. Baxendale* was not strictly accurate, holding that the "contemplation of the parties" was no test of the liability of the wrong-doer.

These cases generally hold that, where a wrong-doer acts wilfully or maliciously he is ordinarily liable for all direct results of his act and where the wrong-doer is merely negligent he is liable for the natural and probable consequences of his act or failure to act. These cases are collected in a note to 48 *A. L. R.* 318. See 1 *Sutherland on Damages,* § 16.

■ While we have stated that under certain circumstances, loss of prospective profits may be recoverable in a tort action yet we are clear that such loss of profits must be such as would naturally follow the wrongful act and are certain, both in their nature and in their cause from which they proceed. The loss of such profits cannot be shown by conjecture, uncertain estimates or mere conclusions, but must be substantiated by tangible facts from which the actual damages may be logically or legally shown or inferred. Because the claim for loss of prospective profits must necessarily depend upon the evidence, so we are unable at this time to finally determine this matter and must await the introduction or offer of evidence.

Third and Fourth. Finally the plaintiff seeks to include in his measure of damages the sum of $100 as the cost of "printing and mailing notices to the listed users of his service, *inter alia,* against unauthorized and fraudulent communications supposedly coming from the plaintiff" and the further sum of $1000, being the cost of installing telephones for the "better protection of his business and to provide a safe, efficient, honest and confident means of communication by telephone instead of telegraph."

■ The plaintiff conceives these elements are admissible under the principle of law that where one has been injured by the wrong of another, such injured person is under a duty to make a reasonable effort to minimize the

damages liable to result from such injury. This is a correct principle and a corollary of it is, that the reasonable and proper expenses sustained in the effort to minimize the damages are recoverable by the injured party as a part of his damages. 8 *R. C. L.* 450.

While the rule just stated is of wide recognition, yet the application of that rule must largely depend upon the facts of each case. From the authorities it seems clear that in order to recover expenses incurred in minimizing damages, it must clearly appear, among other things, (1) that the effort to minimize damages must be reasonably warranted by and proportioned to the injury and consequences to be avoided and (2) that it must be under the belief, reasonably justified, that it will avoid or reduce the damages otherwise to be apprehended from the wrong complained of.

In the present case the wrong complained of was the sending of one telegram by the agent of the defendant. There is no suggestion of any other actionable communication from or by the defendant, nor that the plaintiff feared or had reason to fear from a repetition of the alleged wrong.

The plaintiff seeks to recover his expenses in notifying his subscribers against any unauthorized communication. These unauthorized communications, against which the subscribers are warned, have no shown connection with the defendant but are entirely general in their character. It is entirely conceivable that the purpose of the warnings might be to minimize damages resulting from many wrongs with which the defendant has no alleged connection or, indeed, may serve a useful and beneficial purpose of the plaintiff, unconnected with any wrong of the defendant.

There are at least two cases dealing with expense of

publication in seeking to minimize damages. In *Fowle v. Parke* (*C. C.*), 48 *F.* 789, cited by the defendant, the expenses of publication were not allowed. In *Den Norske Ameriekalinje Actiesselskabet v. Sun Printing Ass'n,* 226 *N. Y.* 1, 122 *N. E.* 463, such expenses were held not unreasonable as a matter of law. In the interest of brevity we refer to this latter case for the citation of authorities on the legal principles involved but the facts of that case were so different from the present case that we do not reach the same result.

All that we have said with reference to the cost of the publication of notice applies with equal force to the claimed expense of the installation of telephones. There is no shown or claimed anticipation of a repetition of the alleged wrong by the defendant. One cannot, under the guise of minimizing damages, and at the cost of the other party, set up an expensive alteration of his entire system of communication with all his customers, where there is no shown connection between an alleged tort and the necessity of the change of system. The change of system may be one beneficial to the plaintiff and unless it be proportioned to the consequences of the alleged tort, which are sought to be averted, the expenses of the change may not be charged to the defendant.

The demurrer to that part of the declaration which seeks to recover for loss of profits from those whom it is alleged would have become clients but for the action of the defendant, is now over-ruled, leaving the matter to be determined after the offer or introduction of evidence.

The demurrers to the remaining portions of the amendments are sustained.