**RICHARD PAUL, Inc., v. UNION IM-PROVEMENT CO.**

Civ. No. 284.

District Court, D. Delaware.

March 2, 1945.

See, also, 3 F.R.D. 372.

W. Thomas Knowles (of Knowles & All-mond), of Wilmington, Del., for plaintiff.

Thomas M. Keith and Leighton S. Dorsey, both of Wilmington, Del., for defendant.

LEAHY, District Judge.

■ 1. There was a breach of covenant on the part of defendant.[4] It is clear from the evidence that defendant failed to make the minor repairs contemplated in the lease. This is shown by the nature of the repairs made and paid for by plaintiff, which included cleaning the demised premises. It is equally apparent there was no collateral agreement that the building met the requirements of the various building ordinances of the city of Wilmington. There is no implied warranty that the premises are fit for the particular purpose to which they are to be put. Stein v. Bell Telephone Co. of Pa., 301 Pa. 107, 151 A. 690; Gellis v. Claremont Masonic Ass'n, 85 N.H. 416, 150 A. 295; Bernstein v. Karr, 34 A.2d 651, 22 N.J.Misc. 1.

■ The basis of this result is that the rule of caveat emptor ordinarily applies between landlord and tenant and, in the absence of fraud, there is no liability on the part of the landlord even in situations where the premises are so unsafe or unhealthy that habitation is impossible. The case of Leech v. Husbands, 4 W.W.Harr. 362, 152 A. 729, 731, while not directly in point, holds that the rule of caveat emptor applies between landlord and tenant in the absence of fraud. In that case the court said: "It, therefore, necessarily follows that in the absence of fraud, there is no implied covenant or representation of any character that a house or apartment is free from vermin, bugs, or disease germs, and that such conditions should usually be guarded against by express covenants. Hart v. Windsor, 12 Mees. & W. 68; Naumberg v. Young, 44 N.J.L. 331, 43 Am.Rep. 380; Cutter v. Hamlen, 147 Mass. 471, 18 N.E. 397, 1 L.R.A. 429; 36 C.J. 47, citing Brown v. Delmos, 27 B.C. 471." [5] The landlord, here, did not covenant that the premises satisfied any particular requirements. Paragraph 4 of the agreement which provides that "the Lessee shall use * * * premises for the purpose of carrying on its business of manufacturing and dealing in textile products or other products the manufacture of which will not be detrimental to the aforesaid premises and for no other purpose whatsoever" obviously is for the

---

[4] Jurisdiction in this case is based upon diversity of citizenship. This court is bound by the rule of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, to follow the law of the state of Delaware on the landlord and tenant relationship and other problems of substantive right discussed herein. Fidelity Union Trust et al., etc., v. Field, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109; Meredith v. Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9; Huddleston et al., etc., v. Dwyer et al., 322 U.S. 232, 64 S.Ct. 1015, 88 L.Ed.

1246; Barrett et al. v. Denver Tramway Corporation, D.C.Del., 53 F.Supp. 198, affirmed 3 Cir., 146 F.2d 701, though neither of the parties approached the problem in this light. In many situations discussed herein there is no applicable Delaware law. In such situations I have examined the general authority (and all other available data) on the point and accept that authority as the law of Delaware. Stentor Electric Mfg. Co. v. Klaxon Co., 3 Cir., 125 F.2d 820; Moyer v. Van-Dye-Way Corp., 3 Cir., 126 F.2d 339.

[5] The Leech case illustrates that absent any Delaware precedent, the Delaware courts follow the general authority.

protection of the landlord and is not an implied promise that the premises meet any definite standard of requirements. The landlord did not covenant, then, that the premises satisfy any particular requirements. Liability can be imposed upon the landlord by express contract, but in the absence of this there is no implied warranty that the building is fit for the purpose for which it is intended to be used, or that it complies with the requirements of public regulatory bodies.[6] The conclusion, therefore, is that there has been a violation of the written lease through failure to make the necessary minor repairs but that this is the sole breach committed by defendant. The question remains as to what damages plaintiff may recover.

▇▇▇ 2. Clearly, plaintiff is entitled to recover the amount, to-wit $565.63, which it expended in making the minor repairs which defendant had wrongfully failed to make. In fact, in such situations there is a duty on the part of plaintiff to make these repairs. But, to what other damages is plaintiff rightfully entitled? It is entitled to no other damages. When plaintiff accepted the keys on June 1, 1942, and paid the rent it truly had possession of the premises and defendant did all that was required to deliver possession to plaintiff. Although at this time defendant had failed to make the repairs it had agreed to make it was plaintiff's duty to make those repairs and charge defendant with them, because the value of the repairs which had to be made was insignificant in relation to plaintiff's expectations as to the amount of money which it could reasonably make by a utilization of the additional plant facilities of the demised premises. The rule is that where a covenant is broken, the covenantee must mitigate his damages or, more accurately, that he can recover only for those losses which he could not avoid. Wise v. Western Union Telegraph Co., 7 W.W.Harr. Del., 209, 181 A. 302; Clark v. Marsiglia, 1845, 1 Denio, N.Y., 317, 43 Am.Dec. 670. This rule is based upon the immutable principle that the community's economic energies

are not to be thrown away or mis-directed. In other words, contracts are not enforced by courts merely because the parties made them; the law asserts only such quantum of damages for breach of promises as seem most likely to promote the orderly efficient conduct of the community's economic life. Now, it is manifest that where the cost to a plaintiff is between $700 and $1,000 [7] to alleviate the wrong of defendant, plaintiff cannot fail to make those repairs and charge defendant with upward of $15,000 of damages.

▇▇▇ True, plaintiff could not have effectuated the repairs immediately. It must, however, have been within the contemplation of the parties that all the repairs could have been made within a period of twenty days, for the lease was made on May 11, 1942, and possession was to be delivered on June 1, 1942. But, even if plaintiff be allowed a period of twenty days within which to make the repairs, still it can not recover for loss of profits during such a period. There was an obvious and flagrant breach of covenant according to plaintiff's own contention; hence, plaintiff was under a duty to inspect the premises at the time it accepted possession on June 1, 1942. By paying rent on that day it waived defendant's breach of covenant. Moreover, after breach became obvious even to plaintiff, it nevertheless paid rent on July 1, 1942. The letter set forth above, dated July 1, 1942, cannot be construed to have the effect of making the payment on that day a payment under protest. Furthermore, it appears from the letter itself that the rent had already been paid at the time the letter was written. We have, then, a situation where the tenant continues in possession and pays rent after the covenant is fully broken. In such a situation the breach is waived. Meyers v. Johnson, 186 Ill.App. 37; Deuster v. Mittag, 105 Wis. 459, 81 N.W. 643. Cf. the converse situation in Lofland v. Emory, 2 Har., Del., 297.

While there is no precise Delaware authority, the rule stated is nothing but a particularized example of the general rule

---

[6] Of course, if extraordinary repairs are required by regulatory bodies it may be true that this cost must be assumed by the landlord, but this does not mean that the tenant is relieved from the obligation to pay rent during the period of the repairs or that the tenant can require the landlord to assume the burden of loss of profits during the period of the repairs.

[7] Defendant expended approximately $500. All the lease contemplated was $1,200, which would be $700 additional, and the maximum was to be $600 more, which was to be shared equally between the parties, which would make $700+$300 or $1000.

of waiver of requirements by conduct inconsistent with their enforcement. See Shepard Land Co. v. Banigan, 36 R.I. 1, 87 A. 531. Cf. Randel v. President, etc., Chesapeake & D. Canal, 1 Har., Del., 233; Crumlish v. Wilmington & W. R. Co., 5 Del.Ch. 270. See the excellent discussion of the rule in Curran v. Connecticut Indemnity Co. of New Haven, 127 Conn. 692, 20 A.2d 87.

The conclusion is that plaintiff is not entitled to recover any damages for loss of reasonable anticipated profits as a result of defendant's breach.

 3. Plaintiff also claims that it should have certain rebates of the rent which it paid because the premises during the period (June to September) were not occupied, or at least not fully occupied. But plaintiff can not recover these payments. The whole theory of the plaintiff's case is the affirmance of the lease. Plaintiff's covenant to pay rent is an independent covenant and not dependent upon defendant's independent covenant to make repairs. Exchange Securities Co. v. Rossini, 44 Cal.App. 583, 186 P. 828. Of course, whether a covenant is dependent or independent is a question of intention of the parties to be gathered from the instrument as a whole. But courts lean to a construction which holds that covenants in a lease are independent rather than dependent. See Susswein v. Pennsylvania Steel Co., C.C., 184 F. 102, affirmed 2 Cir., 186 F. 1023; Meredith Mechanic Ass'n v. American Twist Drill Co., 67 N.H. 450, 39 A. 330; Brady v. Brady, 140 Md. 403, 117 A. 882. Here the covenants to pay rent and make repairs are independent, not only because of the particular language used, but also because a breach of the covenant to make repairs could be readily compensated for in damages.

 4. Defendant's counterclaim is bottomed on the argument that the shaftway had to be installed solely as a result of plaintiff's wrongful alterations. Defendant argues it made all the repairs contemplated by the lease and plaintiff had no right to make repairs; but defendant did not make the repairs contemplated by the lease Plaintiff was accordingly justified in making the repairs and, as all repairs made by plaintiff were contemplated by the lease, they should have been made by defendant. Therefore, it is apparent that, if defendant had made the repairs in accordance with its agreement, it too would have been obliged to construct the shaftway, for the building inspector of Wilmington would have made an inspection before granting defendant the right to make the repairs.[8] But it is unnecessary to resort to such metaphysical reasoning, for the plain fact is that defendant was under a legal duty to conform the shaftway to the law.[9] That plaintiff, by its complaint to the building inspector, started steps looking to compliance is unimportant. The defendant was under an absolute and independent legal duty to make the shaftway conform to the requirements of the building code. Even if it were true that had not plaintiff made the alterations, the building inspector would not have required construction of the shaftway, defendant's position is still no better for plaintiff's alterations were a direct result of defendant's breach of its agreement. The conclusion is that defendant is not entitled to recover under its counterclaim.

Judgment should be awarded to plaintiff for $565.63.

---

[8] Of course, it must be assumed that defendant would inform the building inspector and secure a permit before making the agreed repairs.

[9] The building inspector at the trial testified that the shaftway did not conform to the building code. This was the reason for his requirement that it be changed. No appeal was taken from his order of change of the shaftway. Hence, I shall assume that he correctly interpreted the requirements of the building code.