### COLLIER et al. v. LEEDOM CONST. CO.

Civ. No. 1130.

United States District Court
D. Delaware.

May 26, 1949.

Clement C. Wood (of Hering, Morris, James & Hitchens), of Wilmington, Del., for plaintiffs.

F. William Carr (of Killoran & Van Brunt), of Wilmington, Del., for defendant.

LEAHY, Chief Judge.

This is an action for breach of contract by the owners of a steam shovel against the user. The complaint alleges this court has jurisdiction because of diversity and requisite amount. The case was tried to the court.

At trial it appeared that plaintiffs, on about April 13, 1948 entered into a contract with defendant for the rental of a crane or PH shovel, ⅝-yard capacity. In terms, the contract provided that the use of the shovel would commence on or about April 13, 1948 and would continue "an 'approximate' 5 month period" and defendant would pay plaintiffs a rental of $750 per month. The operator of the shovel was to be furnished by plaintiffs but paid by defendant. Defendant was also to pay for gas, oil and minor repairs. Work was actually commenced on about April 26, 1948.

On May 18, 1948 defendant directed a letter to plaintiffs in which it notified plaintiffs of its intention to discontinue use of the shovel on May 24, 1948. No reason was assigned for the intended discontinuance. The shovel was not actually used after May 19, 1948, but it remained on the job site until June 18, 1948. Defendant admits liability for $786.34.

Plaintiff Medford Collier, who negotiated the contract, had at the time a contract with defendant for mason work at a building project on the Caufield estates near Wilmington, Delaware. One of Collier's sons had a position as foreman of grading. Defendant claims that when it told Collier it needed the shovel Collier was informed that its purpose was to assist in the erection of prefabricated parts of houses. Defendant also claims Collier informed it that the shovel was in A-1 condition. The testimony was in dispute as to whether Collier actually knew the purpose to which the shovel was to be put. It appears that there is no dispute that the word "approximate" in the contract was placed there for the reason that the time was indefinite depending upon the completion of the contract for the houses. The shovel, in fact, was 16 years old and the evidence was conflicting whether it could be used expeditiously for erecting the prefabricated parts. It was, however, conceded that defendant had other work for which a shovel was needed; defendant claims that even here the shovel was not satisfactory. While the evidence was conflicting relative to the number of delays due to break-downs, it is admitted that the shovel did break down once and repairs required about a half-day. Defendant claims that the shovel was unsatisfactory for a number of other reasons and the unsatisfactory performance of the shovel was the cause of the discontinuance of its use. Collier, for plaintiffs, testified that he did not know why the use of the shovel was discontinued but believed it was because he discontinued block work at the Caufield estates.

On direct examination, Collier testified that the $750 a month, although that sum was all profit except for depreciation, was a smaller profit than he customarily made when he put the shovel out at $7.50 an hour. At $7.50 an hour the net on the shovel, disregarding depreciation, was $42 a day. After the shovel was moved from the job in June it was put out on a job at the customary $7.50 an hour. After that time it was used for the plaintiffs' own purposes of loading trucks with dirt, topsoil, mushroom soil, cinders and celler digging. It was admitted by Collier on cross-examination that the value of shovel duty was figured into the contract price when it was used for these various purposes. While he stated that the contract price was not based on shovel duty at $7.50 an hour, he

has no means of evaluating the price per hour at which the shovel duty was computed. He has no breakdown of figures. His system of bookkeeping simply fails to give the answer.

Based on this testimony, plaintiffs contend that there was clearly a good contract for at least a five month period and the only mitigation of damages is for the week the shovel was hired out, because with respect to other use of the shovel by the plaintiffs, defendant failed to show mitigation in dollars and cents. Defendant, on the other hand, contends that there was no contract because the shovel did not measure up to the requirements mutually contemplated by the parties. But if there was a contract plaintiffs' damages are small due to the doctrine of mitigation. Defendant also contends that the court lacks jurisdiction because the amount in controversy is less than the jurisdictional amount.

This case, then, raises questions whether there was a contract and if there was, whether there was a breach and substantial damages. I turn to a consideration of these questions.

■ 1. It is clear from the evidence the parties entered into a contract.

Jurisdiction in this case is based upon diversity of citizenship. This court is bound by the rule of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R.1487; Richard Paul, Inc., v. Union Improvement Co., D.C.Del., 59 F.Supp. 252, to follow the law of the State of Delaware on the law of contracts and the other problems of substantive right discussed herein, Fidelity Union Trust Co. et al., etc. v. Field, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109; Meredith v. Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9; Huddleston et al., etc. v. Dwyer et al., 322 U.S. 232, 64 S.Ct. 1015, 88 L.Ed. 1246; Barrett et al. v. Denver Tramway Corp., D.C.Del., 53 F.Supp. 198, affirmed 3 Cir., 146 F.2d 701, though neither of the parties approached the problem in this light. Where there is no Delaware law I have examined the general authority (and all of the available data) and accept that authority as the law of Delaware. Stentor Electric Mfg. Co. v. Klaxon Co., 3 Cir., 125 F.2d 820; Moyer v. Van-Dye-Way Corp., 3 Cir., 126 F.2d 339.

■ Defendant was in great and immediate need of a shovel and he received use of plaintiffs' shovel under the agreement at a less price than plaintiffs customarily let it. The inference is compelling that defendant knew the age and type of shovel which was the subject of the agreement, or its need was so great that it took the chance that the shovel would meet its requirements. Moreover, it is at least a justifiable inference that the shovel did meet the requirements in the contemplation of defendant at the time of the agreement and when the urgent need was alleviated to some extent, defendant's requirements changed. Two circumstances enforce this inference. First, defendant's notification that it intended to discontinue the use of the shovel almost precisely coincided with one of the plaintiffs discontinuing work which he individually was doing for defendant. There was no reason given for the discontinuance of the use of the shovel, and, in fact, there was not the slightest intimation in the notice that the shovel was unsatisfactory. Secondly and more pertinent, defendant did, in fact, use the shovel for some 20 working days. On the basis of these facts I think the probabilities are great that the arrangement constituted a contract.

The evidence indicates equally clearly that the notice of discontinuance by defendant was a breach of that contract as indicated. The evidence amply supports the conclusion that the shovel met the requirements contemplated by the parties at the time of the agreement. Whether the shovel met the desires and requirements of defendant when its need became less urgent is irrelevant. The correct operative date to interpret the meaning of an agreement is obviously its date of execution. The conclusion is inescapable that the shovel clearly met the requirements within the contemplation of the parties on such date.

■ 2. Since I hold that there was both a contract and a breach, it is necessary to consider the question of damages. When there has been a breach of contract

there is not the slightest doubt that the innocent party can only recover for damages which he was unable to avoid. The rule was stated by this court in Paul, Inc., v. Union Improvement Co., D.C.Del., 59 F. Supp. 252, 256. Where a covenant is broken, the covenantee must mitigate his damages or, more accurately, he can recover only for those losses which he could not avoid. Wise v. Western Union Telegraph Co., 7 W.W.Harr., Del., 209, 181 A. 302; Clark v. Marsiglia, 1845, 1 Denio, N.Y., 317 43 Am.Dec. 670. This rule is based upon a primary principle that the community's economic energies are not to be thrown away or mis-directed. In other words, contracts are not enforced by courts merely because the parties made them; the law asserts only such quantum of damages for breach of promises as seem most likely to promote the orderly, efficient conduct of the community's economic life. Plaintiffs claim this rule has no application here because defendant has a burden of proving mitigation and to sustain this burden it must prove the amount with certainty. Plaintiffs cite a number of authorities for this proposition.[1] Plaintiffs' cases pose a problem in semantics more than of law. I think they mean simply that defendant must show that circumstances for mitigation but need not prove it in dollars and cents. Here that is impossible because the information is within the exclusive knowledge of the innocent party. Plaintiffs admit that they figured the value of the shovel in their various contract prices but are unable to state at what figure they placed the value of the shovel. Obviously, to penalize a defendant in such a situation would permit the wronged party to vitiate an admittedly desirable rule by the simple expedient of keeping inaccurate records or, better still, by destroying the records.

Moreover, all a party usually need show is that the damages could be avoided and to show the extent with reasonable certainty. The requirement that a party must prove his damages with dollars and cents certainly has never been part of the law since the requirements of an action of debt were relaxed.[2]

The evidence clearly shows that during a portion of the contract period the damages could be and were avoided. I think that plaintiffs are entitled to damages to June 18, 1948—the date the shovel was actually removed from the job site. Plaintiffs are entitled to recover between the date of execution and June 18, 1948, because the evidence fails to show that it was more probable than not that plaintiffs could have removed it and secured a user for it prior to June 18. In fact, in view of the testimony I think plaintiffs found a use for the shovel in a reasonable time after the notification of discontinuance of its use.

■ 3. There is the further and difficult question as to whether the evidence justifies the conclusion that plaintiffs received from June 18 on, more than the contract price that was agreed upon with defendant so that a portion of this income would spill over and reduce the recovery at the contract rate from April 26 to June 18. As a corollary of the rule of mitigation of damages, the innocent party, where the contract, as here, is entire, can only recover damages actually suffered. Therefore, if plaintiffs during the remainder of the five month period received more than the contract price—and they did for the week it was let to an individual user—that would

[1] Plaintiffs cite these cases: Standard Growers' Exchange v. Hooks et al., 5 Cir., 22 F.2d 599; Barnebey v. Barron G. Collier, Inc., 8 Cir., 65 F.2d 864; Sedgwick on Damages, 9th Ed., Vol. 1, § 227, pp. 447, 448.

[2] Professor Ames, in "Lectures on Legal History", p. 88, said: "The ancient conception of a creditor's claim in debt as analogous to a real right manifested itself in the rule that a plaintiff must prove at the trial the precise amount to be due which he demanded in his praecipe quod reddat. If he demanded a debt of 20 pounds and proved a debt of 19 pounds, he failed as effectually as if he had declared in detinue for the recovery of a horse and could prove only the detention of a cow. * * * The obligation must be for a definite amount. A promise to pay as much as certain goods or services were worth would never support a count in debt."

This requirement existed only when the formulary system held preeminence. It has, of course, not existed for many years.

of course pro tanto reduce the recovery below the contract rate for the period of April 26 to June 18. While I think the evidence shows that it is more probable than not that plaintiffs, when they used the shovel themselves, appraised it at more than the contract rate to defendant here, nevertheless I have concluded not to reduce the recovery for the period April 26 to June 18. The reason for this is that the evidence fails to show that the shovel was used by plaintiffs all of the working days of the period from June 18 to the original termination date. In fact, I think the evidence shows that it probably was not used with great regularity in plaintiffs' business.

4. The final question is whether the requisite jurisdictional amount is present. Although this is a jurisdictional question, I have left it until last because I think the above discussion shows conclusively that the matter as pleaded in controversy exceeded $3,000. Jurisdictional amount is determined by claim, not actual amount awarded. It is perfectly apparent that plaintiffs claim more than $3,000. In fact, the amount is reduced only as a result of defendant's satisfactorily proving an affirmative defense, i. e., mitigation of damages.

An order directing that judgment may be entered in accordance with this memorandum may be submitted.