## CONSOLIDATED VULTEE AIRCRAFT CORP. v. UNITED STATES.

### Civ. A. No. 1334.

United States District Court
D. Delaware.

May 11, 1951.

Caleb S. Layton (Richards, Layton & Finger), of Wilmington, Del., Robert B. Watts, Albert C. Bickford and Burton M. Abrams (Simpson, Thacher & Bartlett), all of New York City, for plaintiff.

William Marvel, U. S. Atty. and James L. Latchum, Asst. U. S. Atty., of Wilmington, Del., for defendant.

RODNEY, District Judge.

This is a motion for summary judgment under Fed.Rules Civ.Proc. Rule 56, 28 U.S.C.A., and such motion has been made by each party. The facts are not in dispute and appear in the pleadings, requests for admissions and answers thereto and affidavits filed.

The action is brought pursuant to Title 28 U.S.C.A. § 1346 to recover amounts allegedly owing and unpaid under a Government cost-plus-fixed-fee contract, designated as Contract NOa(s) 3505, entered into by the parties on June 30, 1944. The contract covered an estimated cost of $10,256,937.40, for the repair and overhauling of Government furnished aircraft. The contractor was to be paid a fixed fee of $409,546.83 and in addition was to receive the "allowable cost" of performing the contract. A portion of claimed "allowable cost" and amounting to $7,315.17 was disallowed and is unpaid, and for this amount this action is brought.

The "allowable cost" is governed by Section 6(b) of the contract as set out in the footnote.[1] The Explanation of Principles mentioned in the contract as explanatory of its terms is a lengthy document providing generally that the costs for which the contractor was entitled to reimbursement included not only direct costs, such as labor and material costs, but a ratable portion of corporate and administrative expenses related to the general management of the contractor's business which, as a general term, may be designated as "overhead." Section 40(f) of the Explanation of Principles specifically includes as an allowable expense "Contributions to local charitable or community and similar organizations to the extent constituting

ordinary and necessary business expense." Section 54(e) expressly makes not allowable "Donations other than those mentioned in paragraph 40(f)."

The contractor for the fiscal year ending November 30, 1945, made contributions to American National Red Cross and Community War Chests aggregating $152,355.00. This amount was allocated on the basis of direct labor charges with the result that 4.8014 per cent, or $7,315.17, was allocated to this Contract NOa(s) 3505; 4.1468 per cent, or $6,317.86, was allocated to other cost-plus-fixed-fee contracts; and 91.0518 per cent, or $138,721.97, was allocated to fixed price contracts, of which the entire amount was borne by the contractor. There seems to be no dispute as to the correctness of these percentages or as to the amounts derived therefrom. It is the allowability of the contributions that is contested.

The claim of the plaintiff for the allowance of the amount of the charitable contributions was initially denied by the Navy Cost Inspector. The reason assigned for this initial disallowance was that, after the making of the contract and on October 1, 1944, there had been issued a Revised Cost Inspection Manual under which it was claimed that these charitable contributions were not allowable. This Revised Expense Ruling E–11 is set out in the footnote.[2] It may be noted that in this Ex-

1. "Allowable Cost shall constitute the cost incurred by the contractor in the performance of this contract and accepted by the Bureau of Supplies and Accounts, Navy Department, as chargeable thereto in accordance with 'Explanation of Principles for Determination of Costs under Government Contracts, War Department—Navy Department' printed by the United States Government Printing Office, April 1942, * * *."

2. "Contributions to Charitable Organizations

"a. To be allowable as an element of cost of Navy Contracts, contributions to local charitable or community and similar organizations must be reasonable in amount, ordinary and necessary business expenses, and incident to and necessary for the performance of the contract.

"b. The review of contributions to de-

termine that they meet these requirements will necessitate careful consideration of the nature and extent of the services rendered or made available by the organization to the contractor or the employees engaged upon the contract work.

"c. The services to be derived by reason of the contributions must (to be allowable) be in addition to these which the contractor or its employees would receive even if no contribution was made by the contractor. A contribution to a local hospital under an arrangement whereby the hospital will provide medical attention to employees injured in the performance of the contract work would, if reasonable in amount in relation to the services expected to be rendered, be an example of an allowable contribution.

"d. Voluntary payments for which no service, incident to or necessary for the

pense Ruling E–11 contributions to Community Funds and to the Red Cross are particularly mentioned as ordinarily not allowable.

The Supervisory Cost Inspector and the Bureau of Supplies and Accounts (Cost Inspection Service) sustained the view of the Resident Cost Inspector and held the contributions were not reimbursable. Section 34 of the contract between the parties dealt with disputes that might arise and is set out in the footnote.[3] The Chief of the Bureau of Supplies and Accounts expressly directed notification to the contractor of a pertinent directive issued by the Secretary of the Navy dated November 27, 1942, which provided as follows: "In all cases of disputes as to whether certain items of cost under the contract are allowable, arising under a contract which provides for the determination, acceptance or allowance of costs thereunder by the Bureau of Supplies and Accounts, the decision of the Chief of the Bureau of Supplies and Accounts (Cost Inspection Division) with respect to such disputes shall be final and conclusive, subject to appeal by the contractor within 30 days to the Secretary of the Navy or his duly authorized representative."

The duly authorized representative of the Secretary of the Navy was the Navy Board of Contract Appeals.

Following the notification by the Bureau of Supplies and Accounts, of the disallowance of the claim for reimbursement, the contractor perfected its appeal to the Navy Board of Contract Appeals. That Board, on February 28, 1949, made an exhaustive consideration of all the facts. It considered the reasons the contributions were made and the circumstances affecting the amount

thereof; it considered the contributions for similar purposes made by the contractor in former years, and all other pertinent facts. In 1947 the Navy Board of Contract Appeals, in Nash-Kelvinator Corp.,[4] a case almost identical with the present one, had considered the effect of the Revised Expense Ruling E–11 of October 1, 1944, in connection with the Explanation of Principles as applicable to a contract of prior date.

In the appeal in the present case the Navy Board of Contract Appeals reviewed its action in the Nash-Kelvinator case and readopted its holding. The Board reversed the action theretofore taken by the Bureau of Supplies and Accounts in the present case and held the charitable contributions as allowable costs and remanded the case to the Chief of the Bureau of Supplies and Accounts for action in accordance with the decision. Under the express terms of Section 34 of the contract, and by the implicit terms of the Navy Department directive of November 27, 1942, the decision of the Navy Board of Contract Appeals was made "final and conclusive upon the parties."

When the matter again reached the Bureau of Supplies and Accounts, the contract had been completed by the plaintiff and the claim was no longer under the jurisdiction of the Navy Department. The Bureau thereupon forwarded the claim and voucher, together with the findings of fact of the Navy Board of Contract Appeals to the Claims Division of the General Accounting Office with the notation, "The Bureau of Supplies and Accounts recommends favorable consideration of the claim pursuant to the Findings of Fact (enclo-

performance of the contracts were received would not be reimbursable. Donations for foreign relief, Community Funds, Navy Relief Fund, the American Red Cross and the USO are examples of contributions which should ordinarily be considered as not allowable.

"e. The above ruling will be effective in respect to all contributions for which the contractor makes payment on and after October, 1944."

3. "Except as otherwise specifically provided in this contract, all disputes concern-

ing questions of fact arising under this contract shall be decided by the contracting officer, subject to written appeal by the contractor within thirty (30) days to the Secretary of the Navy or his duly authorized representative whose decision shall be final and conclusive upon the parties hereto. In the meantime the contractor shall diligently proceed with performance."

4. 4 Contract Cases, Federal (CCF) Pararagraph 60,290, page 50,488.

sure (b))." Notwithstanding this final action of the Navy Department, the General Accounting Office, on February 16, 1950, rejected the claim, stating to the contractor, "These contributions were voluntary on your part and as such cannot be considered as necessary to the performance of the contract." In the impassé thus formed, with the highest authorities of the Navy Department approving the payment and the General Accounting Office refusing the payment, this suit is brought.

█ It is somewhat difficult to exactly determine the position adopted by the Government, the defendant. In its original answer, the defendant seemed to rely upon the Budget and Accounting Act of 1921[5] as making the General Accounting Office the supreme arbiter as to payments on contracts with power to deny such payments even though approved by the highest authority of that branch of the Government by whom the contract was made. By amended answer this specific defense was withdrawn. The authorities seem uniform on the subject. Stemming from United States v. Mason & Hanger Co.,[6] and followed in Penn Bridge Co. v. United States,[7] and other cases, the principle seems to be, as stated in James Graham Mfg. Co. v. United States,[8] "The powers of the Comptroller General are extensive and broad.. But he does not, absent fraud or overreaching, have authority to determine the propriety of contract payments when the contracts themselves vest the final power of determination in the contracting executive department." See also the pertinent case of John H. Mathis Co. v. United States.[9]

█ The Government's principal contention seems to be that the Navy Board of Contract Appeals had no jurisdiction in the matter in that its jurisdiction, under Section 34 of the contract, as set out in footnote 3, was confined to disputes concerning questions of fact, whereas the interpretation of the contract was solely a

question of law. From this it seems to argue that the determination of the Navy Cost Inspector, the Supervising Cost Inspector, or the Bureau of Supplies and Accounts,—it is not clear which—was the final arbiter of the claim. Waiving the question whether the allowance of the charitable contributions was a question of fact, a question of law or a mixed question of fact and law, certain matters seem entirely clear. The Navy Department, by whom the contract was executed, recognized the right of appeal from the Bureau of Supplies and Accounts to the Navy Board of Contract Appeals; it expressly instructed the contractor how to take the appeal and co-operated therein; it recognized and followed the findings of the Navy Board of Contract Appeals and sent a copy of those findings to the General Accounting Office with a request for the payment of the claim. Above all it sent to the contractor, as the course to be followed in the appeal, the exact language of the directive of the Navy Department hereinbefore set out, which makes the appeal from the Bureau of Supplies and Accounts to the Navy Board of Contract Appeals operative "in all cases of disputes as to whether certain items of cost under the contract are allowable" and without limitation to questions of fact. That the parties intended to make the Navy Board of Contract Appeals the final arbiter of the dispute seems entirely clear. In the language of United States v. Moorman,[10] "To hold that the parties did not so 'intend' would be a distortion of the interpretative process."

█ The Government also contends that the payment of the charitable contributions by the contractor after the adoption of Revised Expense Ruling E–11 on October 1, 1944, a notice of which was sent to the contractor, prevents the reimbursement of those contributions under the doctrine of mitigation of damages. Of course, the doctrine itself, viz., that when

5. 31 U.S.C.A. § 41 et seq.

6. 260 U.S. 323, 43 S.Ct. 128, 67 L.Ed. 286.

7. 59 Ct.Cl. 892, 896.

8. D.C., 91 F.Supp. 715, 716.

9. D.C., 79 F.Supp. 703, 708.

10. 338 U.S. 457, 463, 70 S.Ct. 288, 291, 94 L.Ed. 256.

there has been a contract and breach the innocent party can only recover for those losses which he could not avoid,[11] is fully recognized, but its application to this case is not apparent. It is recognized that the contributions, if made, were required to be made when the "drive" therefor was current. There is here no question of mitigation of damages. The conclusion of the Navy Board of Contract Appeals determined the inapplicability of Expense Ruling E–11 and that the contract from its inception provided for the reimbursement for the charitable contributions.

In view of my conclusions, it is unnecessary to consider further the non-application of Expense Ruling E–11 to the present contract.

The facts being all admitted, summary judgment may be granted and should be entered for the plaintiff.

Judgment may be entered for the sum of $7,315.17 without interest.[12] An appropriate order may be submitted.

11. Richard Paul, Inc., v. Union Improvement Co., D.C., 59 F.Supp. 252; Collier v. Leedom Const. Co., D.C., 84 F.Supp. 348.

12. United States v. Alcea Band of Tillamooks, 341 U.S. 48, 71 S.Ct. 552.