Doris Mae **COLEMAN** and Leroy B. Coleman, et al., Plaintiffs,

v.

George H. H. **GARRISON** and Wilmington Medical Center, Inc., a corporation of the State of Delaware, Defendants.

Superior Court of Delaware,
New Castle.

Aug. 23, 1971.

Joseph S. Yucht, Wilmington, for plaintiffs.

Howard M. Handelman and William J. Alsentzer, Jr., Wilmington, for defendants.

## OPINION

MESSICK, Judge.

The plaintiffs in this case are Doris Mae Coleman and Leroy B. Coleman, her husband, and Ella Mae Coleman, Leroy B. Coleman, Jr., Larry Edward Coleman, Linda Marie Coleman and Thomas Phillip Coleman, children of Doris Mae Coleman and Leroy B. Coleman.

On October 7, 1966, plaintiff Thomas Phillip Coleman was born to plaintiffs Doris Mae Coleman and Leroy B. Coleman. Defendant George H. H. Garrison, M.D., attended to said birth at the Delaware Division of defendant Wilmington Medical Center, Inc. Prior to the birth of the said Thomas Phillip Coleman, Mr. and Mrs. Coleman discussed with Dr. Garrison the desirability and feasibility of the sterilization of Mrs. Coleman subsequent to the birth of Thomas Phillip Coleman for ther-apeutic purposes and/or socio-economic considerations.

On or about October 8, 1966, Dr. Garrison, pursuant to an agreement between himself, Mr. and Mrs. Coleman and Wilmington Medical Center, Inc., performed an operation known as a bilateral tubal ligation upon Mrs. Coleman. At the time of said operation, Dr. Garrison was assisted by agents of the hospital. Subsequently, Mrs. Coleman became pregnant and another child was born to her on October 26, 1968.

Plaintiffs filed their complaint on October 7, 1968, seeking to recover special, general and exemplary damages for the following:

1. The pain and suffering of Doris Mae Coleman as a result of her 1968 pregnancy.

2. The cost of a tubal ligation.

3. The loss to Leroy B. Coleman of his wife's consortium.

4. The deprivation to Ella Mae Coleman, Leroy B. Coleman, Jr., Linda Marie Coleman and Thomas Phillip Coleman of the amount of care and support which they would have received had the last child not been born to Mr. & Mrs. Coleman in 1968.

5. The medical expenses incurred by Mr. & Mrs. Coleman as a result of the 1968 pregnancy of Mrs. Coleman.

6. The expenses of the care and maintenance of the child born to Mr. & Mrs. Coleman in 1968.

Defendant Wilmington Medical Center, Inc. has moved to dismiss the Complaint on the grounds that there is no recognizable cause of action for "wrongful life" in the State of Delaware in the absence of the creation of such a right by the General Assembly, and that the plaintiffs have no recognizable cause of action for damages under their Complaint.

The question whether a plaintiff in a malpractice suit for negligence by failure

to sterilize may recover damages for the cost of rearing and educating a child who is conceived and born after the alleged negligent sterilization procedure, appears to be one of first impression in this State. However, other jurisdictions have considered the problem. See 27 A.L.R.3d 906 (1969). Several denied recovery for two reasons, viz., (1) An award of damages is against public policy; (2) The birth of a child constitutes a blessed event and is not an injury. Christensen v. Thornby, 192 Minn. 123, 255 N.W. 620 (1934); Shaheen v. Knight, 6 Lycoming R. 19, 11 Pa.Dist. & Co.R.2d 41 (1957). Other courts, however, have allowed the jury to weigh the benefit of a child against the cost of support. Ball v. Mudge, 64 Wash.2d 247, 391 P.2d 201 (1964); Custodio v. Bauer, 251 Cal.App.2d 303, 59 Cal.Rptr. 463 (1967); Jackson v. Anderson, Fla.App., 230 So.2d 503 (1970). In Troppi v. Scarf, 31 Mich. App. 240, 187 N.W.2d 511, the Michigan Court of Appeals decided that the support of a normal child is a proper element of damages although the defendant may argue to the jury that the benefit of a child outweighs the financial detriment of his maintenance.

A Court may determine public policy in the absence of legislation only "when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it. * * *" Mamlin v. Genoe, 340 Pa. 320, 17 A.2d 407 (1941); Lurie v. Republican Alliance, 412 Pa. 61, 192 A. 2d 367 (1963). It has been suggested that the declaration of public policy in *Shaheen, supra,* that favored procreation is erroneous considering the diversity of views on the subject. See Note 19 University of Pittsburgh Law Review 802 (1958). Similarly, since divergent opinions exist in Delaware concerning the problems of birth control and unwanted children, the Court should not express a particular viewpoint as the public policy of the State.

■ In addition, the Supreme Court of the United States in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), held that a state may not proscribe the use of contraceptive devices by married couples. This decision recognizes a constitutionally protected right not to have children. Therefore, this Court cannot deny recovery on policy grounds which rest on the desirability of procreation.

■ The rationale that benefits occurring from the birth of a child neutralize the cost of his maintenance is also suspect. Analytically, plaintiffs seek compensation for the expenses necessary for support despite their love and affection for the child. From this standpoint the birth of the child is not really an issue in the case. See Note 56 Geo., L.J. 976 (1968).

However, conceding that the rewards of a child are in point, it cannot be said as a matter of law that a healthy child always confers a benefit greater than the expense of his birth and support. *Troppi, supra.* Otherwise, all married couples would choose to have children. See Note 113 U. of Pa.L.Rev. 430 (1965).

The jury should be allowed to weigh the benefit against the economic burden, because the advantage which a child brings his parents mitigates the damage of his support.

Section 920 of the Restatement of Torts provides:

"Where the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred upon the plaintiff a special benefit to the interest which was harmed, the value of the benefit conferred is considered in mitigation of damages, where this is equitable."

Since Delaware has recognized this section by implication, a jury may properly consider the cost of support and education as an item of damage in cases of this kind, and in the calculation of the award may subtract the benefits which a child gives his parents. Yarrington v. Thornburg, 205 A.2d 1 (Del.Sup.Ct., 1964).

Under Delaware law a plaintiff may recover damages for his pain and suffering in the past. Prettyman v. Topkis, 9 W.W.Harr. 568, 3 A.2d 708 (Del.Super.Ct., 1938), as long as the damages are confined to such pain and suffering "as it is reasonably probable will result from the injury." Kane v. Reed, 9 Terry 266, 101 A.2d 800 (Del.Super.Ct., 1954). The injury was the imperfect sterilization performed on Mrs. Coleman. The failure of such a sterilization for a married woman living with her husband (and without further utilization of contraceptive devices) will naturally lead to conception of a child. Therefore, pain and suffering intendant upon the pregnancy are reasonably probable results of the injury. Bishop v. Byrne, 265 F.Supp. 460 (D.C.W.Va.1967). Likewise, the medical expenses caused by the pregnancy are a reasonably probable result of the injuries. West v. Underwood, 132 N.J.L. 325, 40 A.2d 610 (1945); *Custodio, supra.*

The question of damages for a subsequent surgical sterilization is a novel one both in this and other jurisdictions. While medical services and pain and suffering are compensable beyond cavil in negligence cases, the cost of a subsequent operation has not often been discussed. The general rule in tort damages is that the tortfeasor must place the injured party in the same financial position he would have been in had there been no tort. It is further noted that the injured party should whenever possible minimize the financial consequences of defendant's negligence. Gulf Oil Corp. v. Slattery, 3 Storey 504, 172 A.2d 266 (Del.Sup.Ct.1961). The question to be resolved then is whether a second sterilization would put the plaintiff in the same situation as prior to the negligence of the first sterilization and whether the second sterilization would be the most appropriate action, considering all the circumstances, for the minimization of damages. Had no tort occurred plaintiff would now be sterile. Whether a second sterilization would minimize damages would require a finding that the effort was reasonably warranted by and proportioned to the injury and the consequences to be avoided and that the plaintiff was under the belief that the effort was reasonably justified. Wise v. Western Union Telegraph Co., 7 W.W.Harr. 209, 181 A. 302 (Del.Super.Ct.1935). Should it be determined that a second sterilization would minimize damages, plaintiff would be entitled to recover from defendants. *Wise, supra.*

In tort cases Delaware has allowed a husband to sue his wife's tortfeasor for loss of consortium during the period of injury. Creed v. Hartley, 199 A.2d 113 (Del.Super.Ct.1962), aff'd. Hartley v. Creed, 196 A.2d 224 (Del.Sup.Ct.1963). There is no reason to follow a different rule in the instant case of negligent sterilization.

By attempting to have Mrs. Coleman sterilized the Colemans sought to maintain a certain standard of living, a certain amount of love and affection, and a certain amount of parental protection for their then four children. The pregnancy and impending birth of a fifth child will upset the portion allotted to each child. Should such change in family status be measurable economically, it should be compensable. *Custodio, supra.*

The motion of Wilmington Medical Center, Inc. to dismiss the Complaint is denied.

It is so ordered.