JONES, JUDGE:
This claim was filed by John C. Varner, Administrator of the estate of Julia M. Varner, deceased, for the alleged wrongful death of the decedent under Chapter 55, Article 7, Section 6, of the Code of West Virginia, and the damages sought, including financial and pecuniary loss, are 'in the amount of $104,551.36. Mrs. Varner died as the result of a collision on United States Route 250 about Vi mile south of Fairmont on May 12, 1967 ait approximately 1:19 a.m. She was 32 years old and was an employee of Fairmont Lamp Works, a Westinghouse plant. Her husband, John C. Varner, is her sole distributee.
Mrs. Varner, Sandra Eddy and Jo Ann Smith quit work at Westinghouse at 12 o’clock midnight, joined Roy Hughes and John Serafine and were together at the Executive Club in Fairmont until it closed at 1 a.m. The group then decided to drive south on United States Route 250 to 3-Ways Inn, Mrs. Varner driving her 1966 Dodge Dart convertible with Eva Meconi, Joyce Droddy and John Serafine as passengers, and Sandra Eddy driving another car accompanied by Jo Ann Smith and Roy Hughes.
*120 In a statement in his own handwriting and made and signed shortly after the accident, Roy Hughes gave this account: “We were going South on 250 Highway at approximately 1:10 a.m. ait approximately 50-55 MPH and Mrs. Julie Varner, driver of the vehicle involved, passed us as we were slowing down to go 'around the boulder, we were approximately 150 feet from the boulder at that time, she seemed to see the boulder as her brake lights came on and she swerved, but caught the left front fender and careened into the ditch and bounced back on to the road. * * *” He further testified: “Yes, it appeared that she <was directly in front of us and just before the impact there seemed to be a swerve to the left and then one back to the right just when she glanced off of it.” Hughes and other witnesses for 'the claimant testified that Mrs. Varner passed in a passing zone and appeared to be executing a normal, careful passing of the Eddy oar until she saw the boulder. According to Miss Eddy’s testimony, “When she cut back in we saw her brake lights for just an instant. The car swerved, she hit the boulder .and then went into the bank.” Jo Ann Smith described .the happening in these words: “As she passed, she may have been half a car length 'ahead of us and she threw her high beams up. This is when we saw that there was something in the road and it didn’t look to me as though she saw the rock because it seemed like about an instant before she hit the rock, there was brake lights and she did swerve as though she didn’t know which way to go to get out of 'the way of the rock.”
The boulder was estimated to be 4 feet high, 14 feet long and 6 to 7 feet wide. The investigating Deputy Sheriff measured the location of the boulder to be 10 feet 5 inches from the edge of the pavement and 7 inches to the right of the center lane. Mrs. Varner’s car traveled 84 feet from the point of collision, striking the right hand ditch and hillside.
It appears from the evidence that the road was straight, fairly level >and dry, and although there is conflicting testimony regarding the area being a passing or no passing zone, it further appears from the evidence that the greater part of the passing operation was in a passing zone, although there were skid marks from left to right across a double line just a few feet .after the broken line ended. The fact that after *121 passing the Eddy’s oar Mrs. Varner did cross a double line does noit appear to have proximately contributed to the collision. There is some testimony referring to lights of an approaching vehicle, but 'there is no satisfactory proof that another vehicle was involved.
Route 250 in the area of this accident is rather typical of West Virginia highways, being located on a narrow, excavated shelf between the West Fork River and a high cliff. While there is conflicting evidence regarding (the fact, the Court is satisfied that there was a “Falling Rocks” sign at each end of this stretch of road, the sign going south being approximately 14 to % of a mile from -the point of collision. Slides in this area 'appear to have occurred frequently, rocks and dirt falling to the ditch line and generally being removed in a routine manner. There is evidence that other large rocks previously had rolled on to the highway, one causing the wreck of a pickup truck and another large enough to wreck a car. An ex-maintenance superintendent for the respondent in Marion County described the area as “the most dangerous place on Route 250” and another witness who traveled the road frequently, testified that he had observed the big boulder on many occasions and it looked like it was “ready to come down”. Several witnesses testified that physical markings on the ground clearly indicated that this boulder had broken loose at an earlier time and had fallen approximately 35 feet to a shelf and after resting there for some indefinite period of time had become dislodged and crashed down the steep slope to the highway, leaving a path plainly visible more than two years later. There was considerable testimony relating to complaints made to the respondent, some fairly direct and credible and others extremely vague, but, in any event, there is sufficient evidence -to show that the respondent recognized or should have recognized a potential hazard, but never made any more than a cursory inspection of the area. The attitude of the respondent’s agents may have been that maintenance funds were already short enough without looking for places to spend them. The respondent 'did maintain patrols of this highway and the road was patrolled by two of respondent’s employees a short time before the accident. How *122 ever, patrolling was for the purpose of finding and removing obstructions and had nothing to do with the prevention thereof.
The State is not the insurer of its highways and the State Road 'Commission cannot be held responsible for every rock or 'boulder (that falls on -them. “Falling Rocks” signs are practically indigenous to West Virginia roads and to eliminate every hazard contemplated by such signs would require expenditures so enormous as to be financially unsound and prohibitive. However, when the State Road Commission knows or should know that an unusually dangerous condition exists, there is a duty to inspect and to oorreot the condition within the limits of funds appropriated by the Legislature for maintenance purposes. There is substantial evidence in this case of a dangerous condition and no showing that the respondent did anything beyond the routine cleaning of ditches and the removal of rocks which previously had fallen on the highway.
The Count has given serious consideration to the contention of the respondent’s counsel that the claimant’s decedent was guilty of such contributory negligence as would bar recovery, and there is evidence that would support such a finding, except for the hard and obvious fact that this woman was confronted with a sudden emergency of considerable magnitude and not of her own making. She was in a position to pass the obstacle unharmed, but the Court takes into consideration the stress of the occasion, her natural apprehension and confusion, and concludes that any fault in her judgment must be excused.
After thorough and deliberate consideration of the many facets of this case, including a great deal of conflicting -testimony, the Court has decided that the claimant has a valid claim which in equity and good conscience the State should pay. Counsel for the parties have stipulated the following allowable expenses: Funeral, $1,451.30; car damage, $1,740.00; and -ambulance service, $10.00; a total of $3,201.30. The Court is not impressed by the testimony and 'argument attempting to show dependency of 'the decedent’s husband, and, -although the decedent was a wage earner and looked after the family finances, -the Court does not find any financial or pecuniary loss to the husband as a dependent distributee. The Court is *123 of opinion that an .additional allowance of $5,000.00 for the wrongful death is fair and just. And, therefore, a total award in the sum of $8,201.30 is hereby made to the claimant, John C. Varner, Administrator of the estate of Julia M. Varner, deceased.