JONES, JUDGE:
Upon the joint motion of all of the parties, by counsel, the above styled claims were consolidated for purposes of hearing and will be treated together in this opinion.
The following facts have been stipulated and agreed to by the parties or are otherwise undisputed. The claims arise as the result of an automobile accident that occurred July 30, 1971, at approximately 12:30 p.m., on U. S. Route 60, approximately .3 of a mile of its intersection with West Virginia Route 10 Alternate near Barbours-ville in Cabell County. At the time of the accident the claimant, James B. Frazier, 25 years of age, was driving his 1968 Pontiac automobile in an easterly direction along U. S. Route 60, which is a *172 four-lane, asphalt highway. Passengers in the car were his wife, Lou Irene Frazier, 25 years of age, in the front seat with their child, Michael Scott Frazier, 11 months, held in her lap, and Jamy Lou Frazier, 7, in the rear seat. The respondent through a private contractor had repaved a 1.08 mile portion of U. S. Route 60 with asphalt between June 24 and July 1, 1971, which section of highway was opened to traffic on July 1, 1971. The accident occurred on said repaved portion of the highway. The posted speed limit for this section of highway was 45 miles per hour and this speed limit was never reduced until later the same day of the accident when signs were erected reducing the limit to 15 miles per hour. As early as July 20, 1971, an inspection by the respondent’s District Engineer and other employees of respondent showed the repaved surface to be slippery and unsafe when wet and certain steps were taken. Sand was spread on the asphalt to cut down on skidding and when that was washed off by heavy rain, sand was spread again about July 24 or 25. A “Slippery When Wet” sign, 30” x 30”, attached to a post approximately 6 feet high was placed at a point 6 to 8 feet from the berm of the road near the intersection of West Virginia Route 10 Alternate and approximately 500 feet west of the new blacktop. A flasher was installed on the sign on July 29. The road was dry when the Fraziers drove to downtown Huntington to pick up a photograph of their son. The Fraziers returned in a heavy rain and as they came upon the resurfaced portion of the highway the Frazier automobile began to skid, crossed a rounded concrete median strip, approximately 12 to 18 inches wide and 2 to 3 inches high at its apex, and collided with two automobiles approaching in the westbound lanes. James Frazier, Lou Irene Frazier and Jamy Lou Frazier were injured and Michael Scott Frazier died as a result of the accident.
Floyd Hillman, District Engineer for the Department of Highways, testified that about the middle of July it became apparent that the pavement in question was becoming very smooth and shiny, indicating that the bitumin in the asphalt was rising to the top, causing the surface to be slippery in wet weather. Thereafter, sand was placed on the surface of the road, it washed off in a rain and was respread; and “Slippery When Wet” signs were erected, one west of the repaving project. On July 23 or 24, according to Mr. Hillman, “we realized we were going to have to do something to correct this thing (the slippery condition), so we inaugurated a second contract to put an additional surface on of a more open type material.” Mr. Hillman *173 further testified that the County Supervisor had reported to him that the road had become “alarmingly slippery” or perhaps he had used such words as “slippery to the point of being dangerous”; that the need for a safe road was accentuated by the fact that approximately 10,000 vehicles traversed this road each 24 hours; that the extreme hot weather caüsed the bitumin to rise to the surface and that the “very light resurfacing course” used on this road also contributed to the dangerous condition; and that the maximum safe speed on the resurfaced portion of the highway would be 20 to 25 miles per hour.
Donald Tincher, Engineer in the Materials Division of the Department of Highways, in charge of conducting tests to determine the traction factor of the surface of State roads, testified that he tested the portion of the highway involved in these claims on August 3, four days after the accident. He explained that his test findings were computerized and graded 0 to 100, with the higher the reading the safer the road, and that the accepted safe range is 30 to 50. The subject tests in the eastbound lanes produced readings of 12 in the right hand lane and 20 in the left lane. Westbound readings were 19 in the right lane and 23 in the left lane. In his three years’ experience and hundreds of tests all over the State, these were the lowest readings he had ever obtained, and in his opinion constituted a public hazard due to the extreme slippery condition. He further expressed the opinion that traffic was permitted on the new surface too soon, causing the aggregate in the mix to go to the bottom and the bitumin to rise to the top. Answering a question as to whether the condition of the road was hazardous for the traveling public and referring to the 15 mile speed limit which was placed in effect shortly after the accident, this witness answered affirmatively and added “something should have been done and there was.”
Trooper J. R. Bias testified that he arrived at the scene of the accident one or two minutes after it happened; that it was raining extremely hard at that time with water standing on the road; that the highway appeared to be slick; that he did not see any “Slippery When Wet” signs; and he agreed that this was “a notorious strip of road”.
The written agreement made by and between the parties to this claim, by counsel, and made a part of the record in this case, further stipulated as follows: That necessary medical and funeral expenses for Michael Scott Frazier were $541.95; that Jamy Lou Frazier re *174 ceived a chipped tooth and was treated in the Emergency Room of St. Marys Hospital in Huntington and her reasonable and necessary expenses were $71.50; that Lou Irene Frazier was hospitalized at St. Marys Hospital from July 30 to August 2, 1971, for numerous contusions and abrasions and for neurosurgical consultation and care and that her reasonable and necessary medical expenses were $364.74; that James B. Frazier was hospitalized at St. Marys Hospital from July 30 to August 8, 1971, was treated for a ruptured spleen, two collasped lungs, a broken clavicle, broken ribs and numerous contusions and abrasions; that James B. Frazier’s spleen was removed surgically and the collapsed lungs were treated by the insertion of two intercostal catheters, and the reasonable and necessary medical expenses incurred by him were $1,793.43; that Jamy Lou Frazier, Lou Irene Frazier and James B. Frazier have been released from treatment by their treating physicians and no future medical treatment for their injuries is contemplated; and that immediately prior to the accident the 1968 Pontiac owned by James B. Frazier had a fair market value of $1,760.00 and immediately after the accident had a salvage value of $250.00, a difference in value of $1,510.00. It further appears from the testimony that claimant, James B. Frazier, lost six weeks of work at $750.00 per month.
Most of our State’s roads are slippery when wet and regardless of posted speed limits ordinary prudence requires a driver to take greater care in keeping control of his vehicle under such adverse conditions. It also seems fundamental that an important cross-country highway such as United States Route No. 60, with four lanes and carrying 10,000 vehicles per day, would be expected to afford safe passage at or near a posted speed limit of 45 miles per hour. Based on the evidence in this case a safe speed over the portion of the highway involved was 20 to 25 miles per hour, and a few hours after the accident the State saw fit to post 15 miles per hour signs.
We agree with counsel for the State that Mr. Frazier had a duty to exercise great care in traversing this newly laid blacktop highway, described by some witnesses as being “shiny” in the rain. And while he did not see the “Road Slippery When Wet” sign, he probably should have, although it appears from the testimony that it was not well placed for its purposes. Trooper Bias said that he did not see the sign and it seems to us that signs placed off the berm of a highway are not particularly useful in warning of a hazardous condition which *175 in this case would come into existence very abruptly at a point some 500 feet beyond the sign.
Counsel for the respondent very properly cites several decisions of this Court and forcefully argues that they apply to this case. Among the cases so cited are Cassel vs. Department of Highways, Claim No. D-108; Criss vs. Department of Highways, Claim No. D-137; and Parsons vs. State Road Commission, Claim No. D-112. The Court believes that each of these cases correctly states the law and reaches the right decision based upon the facts of each case. While they are pertinent in a general way, the facts here are not the same and the holdings in those cases will not be decisive.
The claimant James B. Frazier arrived at the resurfaced portion of the highway at a speed of 35 to 40 miles per hour. This speed was substantiated by a witness who was driving one of the approaching cars involved in the wreck. The posted speed limit was 45 miles per hour. As this claimant’s car came on to the resurfaced road it began to “fishtail” as on ice and then went into a slide which he could not stop and resulted in the collision with two approaching cars. This claimant does not remember anything more. However, the facts which clearly show the cause of the accident are developed by the testimony of two witnesses who are employees of the respondent, Floyd Hill-man, District Engineer, and Donald Tincher, Engineer in the Materials Division. Both are substantial men holding responsible positions and they gave fair and full answers to all questions. The respondent knew that the road was slippery and unsafe when wet. Sand was put on the road but in a hard rain it washed off. It was raining hard before and during the accident. The condition was so bad that respondent was negotiating a second contract for an additional surface of coarser material. Four days after the accident the respondent’s Engineer tested the road surface at the approximate point where the “fishtailing” started and found an extremely slick condition which he described as the worst he had encountered in three years’ experience and hundreds of tests throughout the State. Three other nearby tests produced slightly better readings, but still worse than any he had ever seen.
It is clear from the evidence that this portion of the highway was extremely dangerous when wet. The respondent knew this and took minor steps to correct the condition. Given time the road would have received a second resurfacing which presumably would have made *176 the road safe. However, the respondent did not do enough. This was a very short stretch of road, 1.08 miles, and it should have been easy to effectively warn the public, and to do the one thing so obviously called for and which respondent did after the accident — reduce the speed limit until permanent repairs could be made.
The Court finds that the respondent was negligent in its failure to protect the public, and that such negligence was the proximate cause of the claimants’ damages. We further find that contributory negligence was not proved. Therefore, the Court is of opinion that the claimants are entitled to recover and awards are hereby made as follows:
To James B. Frazier, $10,000;
To Lou Irene Frazier, $1,000;
To Jamy Lou Frazier, an infant, $500; and
To James B. Frazier, Administrator of the Estate of Michael Scott Frazier $10,541.95.