RULEY, JUDGE:
These three claims all grow out of the same accident and, accordingly, were consolidated. The physical facts in this case are clear. Claimants, Billy Joe Davis and Frank Davis, doing business as Davis Auto Parts in Paintsville, Kentucky, operate a wrecker service. On Friday, June 13, 1975, Bill Joe Davis undertook to tow a large coal truck belonging to Ishmael Collins from Paintsville to Hurricane, West Virginia. At about 2:00 p.m., while travelling toward Charleston on Route 1-64 in the outside eastbound traffic lane, Davis’ tow truck struck a hole in the surface of a bridge located approximately .8 mile east of milepost 19 on 1-64, near the town of Ona. The irregularly shaped hole measured approximately 44 by 48 inches, and, at its location, all of the pavement had dropped out of *32 the bridge, leaving only the steel reinforcing rods in place. When the right wheels of the vehicle hit the hole, in what must have been a spectacular accident, the tow truck went out of control and dragged the coal truck across the inside eastbound lane, past the bridge, across the median strip, and into the westbound traffic lanes. There the vehicles flipped and separated. The coal truck came to rest on its side in the westbound lanes, and the tow truck flipped over, landing back on its wheels in the median strip. Both trucks were damaged, and Billy Joe Davis sustained personal injuries.
Davis’ testimony and pictures taken after the accident establish that Friday the 13th was a clear, dry, sunny day. Davis’ testimony and that of John Mullins, driver of the car immediately behind Davis’ truck, also establish that Davis was driving carefully and within the speed limit. There were no signs warning approaching motorists about the hole in the pavement. Davis could not have stayed in the outside eastbound lane and avoided the hole, but neither could he have swerved into the inside eastbound lane to avoid it, because Mullins was in the inside lane, beginning to pass Davis.
The claimants allege that the respondent negligently failed to maintain the bridge and negligently allowed the hole to exist in the bridge without repairs or warning to motorists.
Since the landmark case of Adkins v. Sims, 130 W.Va. 645, 46 S.E.2d 81 (1947), it has been established in West Virginia that the State is neither an insurer nor a guarantor of the safety of persons travelling on its roads. See also Lowe v. Dept. of Highways, 8 Ct. Cl. 210 (1971). The duty imposed on the Department of Highways is that of “reasonable care and diligence * * * under all circumstances”. Parsons v. State Road Commission, 8 Ct. Cl. 35 (1969). This Court has more recently stated that the State’s duty has been fulfilled “if streets and sidewalks are in a reasonably safe condition for travel in the ordinary modes, by day and night”. Shaffer v. Board of Regents, 9 Ct. Cl. 213 (1973).
Turning to the case at hand, respondent, in its brief, citing four Opinions of this Court, contends that the State properly performed its duties regarding the bridge on Route I-64, and *33 was not negligent. This case differs significantly from the cases cited [Janus v. S.R.C., 1 Ct. Cl. 343 (1942); Harris v. S.R.C., 7 Ct. Cl. 189 (1968); Varner v. Department of Highways, 8 Ct. Cl. 119 (1970); Lowe v. Department of Highways, 8 Ct. Cl. 210 (1971)]. All of those cases involve either falling rocks or placement of guardrails; none involve defects in the road’s surface, as does the instant case. All of those cases concern the two-lane, winding sort of highway for which West Virginia is known (described in Adkins, swpra, as “narrow, with steep grades and sharp curves”); none of them concerns a modern, four-lane, interstate highway such as Route I-64 (unheard-of at the time of the Adkins decision). The Department of Highways has a duty to keep such interstate highways reasonably safe for traffic travelling at authorized speeds, and a concomitant duty to make a reasonable and diligent effort to discover and warn motorists of hazards which foreseeably would make such travel dangerous. On a road where the facts, circumstances, or speed limit would dictate a low speed, a hole such as the one in question might not pose a threat to motorists. But such a hole in a bridge on an interstate highway is an extreme hazard for ordinary traffic. In County Commissioners of Carroll County v. Staubitz, 231 Md. 209, 190 A.2d 79 (1963), it was stated:
“Although the standard of reasonable care remains constant, what is reasonable care in a given situation varies with the conditions present on such road or highway. Reasonable care on a busy, often, travelled highway requires greater diligence on the part of the county commissioners than that required on a relatively little-travelled road.” (citations omitted)
See also Jenkins v. Maryland, 25 Md. App. 558, 334 A.2d 549 (1975), Braswell Motor Freight Lines, Inc. v. Toups, La. App., 255 So. 2d 155 (1971), and 4 Blashfield Automobile Law and Practice, 3rd edition, §161.9 “Extent of Liability”.
Does the respondent’s failure to repair the hole or warn approaching motorists constitute negligence? This Court stated in Frazier v. Dept. of Highways, 9 Ct. Cl. 171 (1972), “It also seems fundamental that an important cross-country highway *34 such as U.S. Route 60 * * * would be expected to afford safe passage at or near a posted speed limit of 45 miles per hour.” And in Varner, supra, this Court held that “when the State Road Commission knows or should know that an unusually dangerous condition exists, there is a duty to inspect and correct the condition within the limits of funds appropriated by the Legislature for maintenance purposes”. The State was found negligent in Varner for failing to correct a known, dangerous condition which caused the rockslide which killed Mrs. Varner. The State has been found negligent for failing to discover and correct a hazard on a bridge which a “casual inspection” would have revealed. Randall v. Dept. of Highways, 8 Ct. Cl. 147 (1970). The State also has been found responsible for property damage caused by a landslide attributable to water backed-up behind a plugged drain along a highway, when the evidence revealed that employees of the Department of Highways had patched cracks in the road caused by the same backwater and should, therefore, have done something to correct the condition of the drain. Olive v. Department of Highways, 8 Ct. Cl. 148 (1970).
The evidence in this case impels the conclusion that the Department of Highways, in the exercise of ordinary care, should have known of the existence of the hole in the bridge before the accident happened. Mullins attested to its existence as early as 9:30 p.m. the day before the accident happened. In view of the evidence that the interstate highway bridges in the area apparently had required surface repairs several times before the accident, the Department of Highways had an obligation to inspect them with reasonable frequency and care. Four employees of the Department of Highways testified that they drove across the bridge in question between the hours of 9:00 a.m. and 12:30 p.m. the day of the accident. None of them saw the hole in question. The respondent suggests that it should be inferred from the testimony of its employees that the hole came into existence only momentarily before the accident happened, but that seems improbable and would require the Court to disregard the Mullins testimony.
The respondent contends that, even if it were negligent, awards should be precluded by the contributory negligence of *35 Billy Joe Davis. Davis had not driven over the bridge in three months. Although he knew that other bridges on the interestate were rough and patched, he had negotiated them safely, and certainly had no reason to expect to encounter the large hole in the bridge. He was travelling at 45 mph (his testimony) or 50 mph (Mullins), below the speed limit. He saw the hole 30 or 40 feet before he hit it, couldn’t swerve to the left to avoid it because Mullins was about to pass him, and had no choice but to drive over the hole. After giving the issue due consideration, this Court cannot conclude that Davis was guilty of contributory negligence. To the contrary, it appears that the respondent’s negligence was the sole cause of the accident, and, accordingly, the issue of liability must be resolved in favor of the claimants.
Turning to the issue of damages, the claimants, Frank Davis and Billy Joe Davis, doing business as Davis Auto Parts, have asserted a claim in the sum of $66,000.00 attributable to damage to the 1969 Ford model 950 wrecker truck which was owned by them. Although both claimants testified that the wrecker truck was a total loss (and there was no evidence to the contrary), it was rebuilt by Frank Davis, who worked on it part-time for approximately one year. Frank Davis testified that it could have been rebuilt in three months if he had worked on it 40 hours per week. Included in this claim are items for the cost of repair of the truck, loss of use of the truck, loss of a large quantity of tools which it was claimed were in the truck at the time of the accident and apparently were carried away by unknown third persons, and a towing charge in the sum of $325.00 for moving the wrecker truck from Hurricane back to Paintsville. The undisputed evidence is that the fair market value of the wrecker truck was $35,-000.00 immediately before the accident and $10,000.00 immediately after the accident, the difference being the sum of $25,000.00, but that the cost of repair was $18,800.00, viz., $14,000.00 for parts and materials and $4,800.00 for labor. In Cato v. Silling, 137 W.Va. 694, 73 S.E.2d 731 (1952), Syl. 7, the general rule is stated as follows:
“[T]he proper measure of damages for injury to personal property is the difference between the fair market value *36 of the property immediately before the injury and the fair market value immediately after the injury, plus necessary reasonable expenses incurred by the owner in connection with the injury. When, however, injured personal property can be restored by repairs to the condition which existed before the injury and the cost of such repairs is less than the diminution of the market value due to the injury, the measure of damages may be the amount required to restore such property to its previous condition.”
Accordingly, the award to these claimants should include the cost of repair in the sum of $18,800.00 plus the towing charge of $325.00. It appears from the evidence and under applicable law that the award should also include some reasonable sum for loss of use of the wrecker truck. See Jarrett v. E. L. Harper & Son, Inc., _ W.Va. _, 235 S.E.2d 362 (1977). A tortfeasor “is held responsible for all the consequences of his negligent act which are natural and probable”. Ohio-West Virginia Co. v. Chesapeake and Ohio Railway Co., 97 W.Va. 61, 124 S.E. 587 (1924). See also Stewart v. Pollack-Forsch Co., 105 W.Va. 453, 143 S.E. 98 (1928). The respondent’s negligence certainly caused these claimants to lose the use of the wrecking truck, and the claimants deserve an award for loss of use for a period of time reasonably required to effect repairs on the truck. The proof offered for determining damages due to loss of use consisted of Davis Auto Parts’ records for receipts from their wrecker operation's covering the period from 18 months before the accident to a date two years after the accident. Those records showed that, before the accident, Davis Auto Parts’ three wreckers (the large one damaged in this accident and two smaller ones) produced an average gross income of $1,786.00 per month; during the time the truck was under repair, wrecker income averaged only $445.00, a difference of $1,341.00 per month. Testimony regarding the expenses of operating the large wrecker included a definite figure of $60.00 per month for gasoline, with no definite proof of the cost of oil, tries, or any maintenance, which the Davis brothers did themselves. A loss of profit, when not awarded, is generally excluded because “there are no criteria by which *37 their amount can be ascertained with reasonable certainty or definiteness.” Stewart v. Pollack-Forsch Co., supra. Thus, prospective profits of a new business (Ohio-W.Va. Coal Co. v. Chesapeake and Ohio Railway Co., supra; Shatzer v. Freeport Coal, 144 W.Va. 178, 107 S.E.2d 503 [1959]; Whitehead v. Cape Henry Syndicate, 69 S.E. 263 [Va., 1910]) or losses due to a reduction of public confidence (Ohio-W.Va. Coal Co., supra) are generally denied as too speculative or conjectural. But if a business is well established, as Davis Auto Parts was, damages may be awarded for loss of profits. Whitehead, supra. In addition, “Uncertainty as to amount of the damages does not prevent a recovery, if the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty [citations omitted].” Haddad v. Western Contracting, 76 F. Supp. 987 (N.D.W.Va., 1948). While the evidence in this case as to loss of use is not as definite as might be desired, we do not believe that it is so uncertain that recovery should be denied. It is our opinion, based upon the evidence, that damages for loss of use for a period of three months is reasonable and that the sum of $2,000.00 would be a fair and just compensation for that loss of use. Inasmuch as the larceny of the tools could not have been a foreseeable consequence of the respondent’s negligence, no recovery for that item can be allowed. From the foregoing, it is apparent that the total award to the claimants, Frank Davis and Billy Joe Davis, doing business as Davis Auto Parts, should be the sum of $21,125.00.
Billy Joe Davis, who was 27 years of age when these claims were heard on December 7, 1976, has asserted an individual claim in the sum of $10,500.00 for personal injuries which he sustained in the accident and for loss of a wrist watch. The only evidence respecting the value of the wirst watch, which was damaged beyond repair, was that its cost on December 18, 1974, was $131.25. Respecting his personal injuries, there was evidence that he sustained cuts and bruises, a fracture of his skull, and a fracture of his twelfth thoracic vertebra. There was no evidence whatsoever concerning the extent or severity of either of the fractures, but there was evidence that, for some time after the accident, Billy Joe suffered from headaches *38 and vertigo. Although he testified that he saw a doctor two or three times after the accident for treatment of injuries related to it, the only evidence of medical expense incurred is an item of $50.00 for an x-ray on June 14, 1975, an item of $35.00 for an x-ray on June 16, 1975, and a charge in the sum of $25.00 by E. E. Musgrave, M.D., for an office visit. The evidence of Joseph P. Seltzer, M.D., who performed a complete orthopaedic and neurological examination upon the claimant on behalf of the respondent on November 29, 1976, was that, as of that date, he had made a complete recovery without any permanent residuals. In view of these circumstances, it appears that an award in the sum of $750.00 will compensate the claimant, Billy Joe Davis, for the personal injuries and damages which he sustained.
The claimants, Hartford Accident & Indemnity Company and Ishmael Collins, the collision insurer and owner, respectively, of the 1974 model Brockway coal truck, have asserted a claim in the sum of $26,667.95 for damage to it. The undisputed evidence is that the damage to the coal truck rendered it a total loss. It appears that the claim which is asserted is made up of the sum of $26,167.95 paid by Hartford to Collins (and to which Hartford thereupon became subrogated) and the sum of $500.00 representing Collins’ deductible portion of his collision insurance. Although there was some confusion about the matter in the evidence, it appears from the evidence that the fair market value of the coal truck immediately before the accident was $24,550.00 and that it was sold for salvage subsequent to the accident for the sum of $2,723.50. Accordingly, an award in the sum of $21,826.50 should be made to these claimants.
Award of $21,125.00 to claimants, Frank Davis and Billy Joe Davis, doing business as Davis Auto Parts.
Award of $750.00 to claimant, Billy Joe Davis.
Award of $21,826.50 to claimants, Hartford Accident & Indemnity Company and Ishmael Collins.