BAKER, JUDGE:
Claimants brought this action for personal injuries and loss of consortium resulting from an accident which occurred on W.Va. Route 2 in Marshall County. The Court is of the opinion that the respondent has a moral obligation to compensate the claimants in light of the known and serious nature of rock fall hazards along this section of Route 2.
FACTS
The incident giving rise to this claim occurred on January 12, 1995, at approximately 6:34 a.m. Claimant Daniel Dimmick was driving his 1994 Toyota pickup truck southbound on Route 2 in an area known as the “Glen Dale Narrows.” Route 2 in this area is a heavily traveled, four-lane road, with two lanes northbound and two lanes southbound. The northbound lanes are bordered on the east by a high wall composed largely of loose shale and sandstone. The southbound lanes are bordered to the west by a two-foot high concrete wall and the Ohio River. The “Narrows” is an approximately one and one-half mile stretch of highway between Glen Dale and McMechen, and is described as an area well-known for rock falls.
The evidence adduced at hearing established that Mr. Dimmick was driving southbound within the speed limit at approximately 50 miles per hour in the far right-hand lane. At the same time, another pickup truck driven by Ronald Kerekes was traveling northbound. It was still dark, and it had been raining the night before. The claimants allege that Mr. Kerekes’ vehicle struck a rock, described as being approximately the size of a basketball, causing him to lose control. The Kerekes’ vehicle crossed the median into the southbound lanes and struck the claimant’s vehicle. Mr. Dimmick’s truck went out of control, became airborne, went over the concrete wall and down the embankment, coming to rest against some trees approximately 50 to 60 feet from the road.
Mr. Dimmick was rendered unconscious and sustained a concussion and lacerations to the head, a broken tooth, and multiple broken bones and ligament damage to both feet. He was released from the hospital after three days. He remained confined to a wheelchair for several weeks, and then gradually moved to crutches and then a cane in June 1995. He later had to undergo a second surgery for a subtalar fusion and bone graft on the right foot on December 12, 1996. Mr. Dimmick has required physical therapy on numerous occasions subsequent to his accident, and continues to experience pain and discomfort in his feet.
At hearing, the respondent argued that there was insufficient evidence that a rock fall was the proximate cause of Mr. Dimmick’s accident. Mr. Dimmick’s deposition and his testimony at hearing were contradictory and unenlightening. In a statement to police, eyewitness Michael Lee Jenkins, who was driving behind Mr. Kerekes, stated that he saw the Kerekes vehicle strike a rock, and then cross to the southbound lanes and strike Mr. Dimmick’s vehicle. In a deposition submitted after hearing, Mr. Jenkins testified that there had been rocks in the road and that these were subsequently removed by the respondent’s employees. The Court is satisfied that the preponderance of the evidence establishes that a rock fall was, indeed, the proximate cause of the claimant’s accident.
ISSUES
At hearing, the respondent filed a Motion to Dismiss, on the basis that this claim was *73 barred under the doctrine announced in Adkins vs. Sims, 46 S.E.2d 81 (W.Va. 1947), wherein the West Virginia Supreme Court of Appeals held that liability may not be imposed on the respondent for failing to install a guardrail along a state road. In Adkins, the Supreme Court stated that the Court may not intrude upon the respondent’s discretionary powers to allocate public moneys for road purposes. The Court added, however, that there may be situations wherein the respondent’s negligent conduct in failing to maintain reasonably safe road conditions may give rise to a claim.
We do not mean to say that situations may not arise where the failure of the road commissioner properly to maintain a highway, and guard against accidents, occasioned by the condition of the road, may not be treated as such positive neglect of duty as to create a moral obligation against the State, for which the Legislature may appropriate money to pay damages which proximately resulted therefrom. Adkins, at 89.
(Emphasis supplied.)
The doctrine that this Court has adopted consistent with Adkins, is that liability for a road defect, such as rock fall hazards, will not be imposed unless the claimant establishes, by a preponderance of the evidence, that the respondent had actual or constructive notice of the defect and a reasonable opportunity to take remedial measures. In the case of vehicle damage caused by falling rocks, the Court has held that the unexplained falling of a rock onto a road maintained by the respondent, without a positive showing of negligence by the respondent, is insufficient to justify an award. Coburn vs. Dept. of Highways, 16 Ct. Cl. 68 (1986). Indeed, the majority of rock fall claims decided by this Court have been disallowed based upon this doctrine. However, when the claimant produces affirmative evidence that the respondent knew of rock fall hazards and failed to take reasonable remedial action, liability will be imposed. Barker vs. Division of Highways, (CC-90-190, unpublished opinion issued January 17, 1992); Koenig vs. Dept. of Highways, (CC-87-220, unpublished opinion issued December 20, 1989); Smith vs. Dept. of Highways, 11 Ct. Cl. 221 (1977); Varner vs. State Road Commission, 8 Ct. Cl. 119 (1970).
The respondent is well aware that the area of Route 2 known as the ’’Narrows” is a notorious rock fall area, particularly the northern section between Glen Dale and McMechen. One of the respondent’s employees described driving through the Narrows as analogous to playing “Russian Roulette.” The Court has reviewed a number of its rock fall claims and notes that this is not the first such claim involving the “Narrows”. Dunn vs. Division of Highways, (CC-92-26, unpublished opinion issued December 11, 1992), award of $882.51. However, the Court notes that the “Narrows” is just one of many areas in West Virginia where incidents of falling rocks commonly occur. Similar rock fall claims arise throughout the State each year resulting in claims being filed with this Court.
Respondent has posted “Falling Rock” signs on both ends of the “Narrows”, for northbound and southbound traffic. The respondent has also installed lights in the “Narrows”, to enable motorists to see fallen rocks in their path at night. The respondent’s employees patrol the road regularly in order to clear rocks from the road, especially during rainy weather and during the winter months when rock fall is more likely to occur due to moisture and freeze and thaw cycles. Finally, the evidence established that the respondent had been patrolling the road throughout the night prior to the claimant’s accident. Respondent has investigated several other measures to abate the propensity of rock falls in the “Narrows” as it is well aware of the conditions hazardous to the traveling public. It is apparent to the Court that while additional *74 measures have been considered none has been undertaken by respondent. These measures were discarded as being either too expensive, impractical, or impossible.
In prior cases where the Court found the respondent liable for rock fall damage, the Court stated that the remedial steps taken by the respondent were either inadequate or nonexistent in response to known rock fall hazards. In Smith, 11 Ct. Cl. 221 (1977), the Court stated that merely patrolling a road, known for many years to be a hazard, was inadequate. In Varner, 8 Ct. Cl. 119 (1970), the Court stated that routine ditch cleaning and rock removal after the fact was insufficient. In Barker, (CC-90-190), the Court stated that the respondent had failed to act upon an engineering study undertaken to abate a known rock fall area.
In Dunn vs. Division of Highways (CC-92-26), December 11, 1992, the Court noted that the Glen Dale Narrows has been a known rock fall hazard since 1941. The Court held that respondent has elected to clean up rocks after they fall, rather than trying prevent them from falling in the first place, and that as a result, the respondent will be held liable when rock fall damage occurs.
All of these cases, consistent with the Supreme Court’s opinion in Adkins vs. Sims, supra. stand for the proposition that the respondent may not stand idly by when confronted with known rock fall hazards. In the instant claim, the Court is of the opinion that in view of the well-known serious nature of rock fall hazards in the Glen Dale Narrows, respondent has a moral obligation to compensate claimants when rock fall results in personal injury or property damage. See also, Stollings vs. Gainer, 170 S.E.2d 817 (W.Va. 1969). Although this Court does not have the authority to dictate to the respondent how to remedy a hazardous condition which in the opinion of the Court poses a continuing threat to the traveling public, the Court can determine from the evidence presented in a claim that respondent has knowledge of the propensity of a highway condition to be hazardous, and the Court may hold respondent liable for failing to take reasonable steps to prevent harm to the traveling public. The Court stresses that its ruling in this claim is limited to the facts and circumstances of this particular claim and to the specific location of the “Narrows” area of W.Va. Route 2. Accordingly, the Court is of the opinion that respondent is liable for the accident which occurred causing injuries to claimant Daniel Dimmick.
DAMAGES
At the time of his accident, Mr. Dimmick was employed as a truck driver for Wheeling Wholesale Grocery. His hourly wage was $12.45. Due to his injuries, he was off work from January 12, 1995, to January 8, 1996, and again from December 12, 1996, to May 27, 1997. He is currently an independent trucker. Mr. Dimmick has alleged lost wages in the amount of $50,278.52, and medical bills in the amount of $28,063.25, most of which appear to have been paid by insurance or through the Workers’ Compensation Fund.
Claimant Daniel Dimmick also received an employment benefit of $830 per year. Therefore, the total gross lost earnings for the approximately one year and a half that he was unable to work is the sum of $47,987.66 ($46,742.66 plus $1,245.00). The claimant submitted into evidence income tax records confirming that his average taxable income between 1989 and 1993 ranged from approximately $26,500.00 and $29,300.00. Wheeling Wholesale closed in October of 1997. The claimant is currently an independent trucker. His current average annual income was not available.
The claimant further alleged that he incurred $28,063.25 in medical bills that are still outstanding. However, the claimant has received approximately $150,000.00 in collateral source payments from Mr. Kerekes’ automobile insurance, the Workers’ Compensation Fund, and health *75 insurance. It is unclear from the evidence exactly how much, if any, of the defendant’s medical bills are still outstanding, and the Court will not speculate as to this amount. Finally, the claimant’s wife testified that Mr. Dimmick’s continued pain in his feet has had a detrimental effect on his personality and on their relationship due to his continued discomfort and resulting decrease in physical activity. Mr. Dimmick was forty-three years of age at the time of this accident. He is unable to take part in many of the family activities which he formerly enjoyed and he continues to experience pain and suffering from his injuries. Not only has his lifestyle changed as a result of this accident, but the quality of his life has been affected. He will continue to suffer both mentally and physically from the injuries that he received in this most unfortunate accident. The Court has taken these facts into consideration as it determined the award made to him in this decision.
In accordance with the finding of facts and conclusions of law as stated herein above, the Court makes an award to claimant Daniel A. Dimmick for pain and suffering, and for the loss of enjoyment of life in the amount of $40,000.00, and an award to claimant Tama Dimmick in the amount of $10,000.00 for loss of consortium.
Award to Daniel A. Dimmick of $40,000.00.
Award to Tama Dimmick of $10,000.00.